THE CITY OF ATCHISON *et al.* v. JOHN M. PRICE *et al.* —SAME v. A. H. LAMPHEAR *et al.*—SAME v. THE BURNES ESTATE *et al.*

1. CITY — *Constructing Sewers — Districts — Tax.* A city of the first class may construct sewers by districts or otherwise, and when done by districts and at the expense of the property specially benefited, it is not essential that the districts shall be defined by ordinance, but it will be sufficient if the records of the tax proceedings clearly show the property specially taxed for the improvement.

2. SEWER *Last Constructed — Cost—What Territory Liable.* The fact that a sewer constructed in one district or portion of the city connects with or is an extension of another already constructed, does not make the territory drained by both a single and distinct district, nor does it require that all the property within that territory shall be assessed for the sewer last constructed. When a section is built or extension made, only the territory drained and specially benefited by the construction of such section or extension can be assessed for its cost.

3. PRIVATE SEWERS, *Not Adopted by City.* Property which abuts upon and is specially benefited by the sewer constructed will not be re-

lieved from bearing its proportionate share of the expense of the same because the owners thereof have previously constructed private drains or sewers which have not been authorized or adopted by the city as a part of its system.

4. LOT — *Two Owners — Liability*. An objection was made to the special assessment upon a lot fronting upon the improvement because the whole of the same was not owned by one person, and that one owner could not avail himself of the benefits of the sewer except by passing over the property of the other. When the assessment was made the recorded plat of the city did not show any subdivision of the lot, or that the frontage of the same had been changed, and it did not appear that any of the public records showed that the title of the lot was in more than one person, and the court held that the whole of the same was subject to taxation. *Held,* No error.

5. STATUTE, *Not Applicable*. The provisions of paragraph 558 of the General Statutes of 1889 do not apply to the construction of sewers or the levy and collection of special assessments to pay for the same.

6. EXPENSE — *Extent of Burden*. The whole expense, including the engineering and supervision of the construction of sewers, is to be borne by the property specially benefited.

7. BONDS *to Pay for Sewer*. A city of the first class may construct a sewer on credit when there are no funds on hand or set aside in the city treasury to pay for the same, but installment bonds of the city may be issued to the contractor constructing the sewer in payment thereof, which bonds shall be redeemed by special taxes levied upon the property specially benefited, as provided in chapter 101 of the Laws of 1887.

*Error from Atchison District Court.*

THREE actions were brought in the district court of Atchison county, to enjoin the issuance of improvement bonds and the levy and collection of special taxes to pay for the construction of a sewer which had been built and completed in the city of Atchison by contractors Shaw & Downing. One action was brought by John M. Price and W. W. Guthrie against the city of Atchison, the mayor and councilmen thereof, and Shaw & Downing; the second action was brought by A. H. Lamphear and sixty-seven others, against the same defendants; the third action was brought by the Burnes estate and fourteen others, against the same defendants. For the purposes of trial and judgment, the cases were consolidated and submitted as

one case, and in due time the court made and announced the following conclusions of fact and law:

"CONCLUSIONS OF FACT.

"1. Each and all of the said plaintiffs are the owners of the several lots and pieces of ground as set forth herein in their several petitions. The city of Atchison is, and ever since about the year 1880 has been, a city of the first class. Fourth street, which, by the authority of the city council in the summer of 1889, was changed to Fourth avenue, is and has been a public street in said city, running north and south. That running parallel with said Fourth street in said city, and east thereof, is Third street in said city, and that running parallel to said Fourth street, and west thereof, is Fifth street in said city.

"2. Said Fourth street, from its intersection with Main street and White Clay creek in said city, running north, crosses the following streets at right angles, as follows: Commercial street, Kansas avenue, Santa Fé, Atchison, Parallel, Laramie, Kearney, Riley and Mound streets.

"3. In the summer and fall of 1884, the city council of the city of Atchison caused to be constructed a circular brick sewer, six feet in diameter, from the intersection of Main street and said Fourth street, at a point where said sewer would empty into White Clay creek, north and in the center of said Fourth street, between blocks 17 and 18, crossing Commercial street and north to a point twenty-nine and one-half feet south of the south line of the alley running east and west in blocks 13 and 14. From this terminus of said brick sewer, arms, four feet in diameter, extended to the intersection of said alley on the east and west side of said Fourth street, at which point suitable catch-basins were made, and which conducted the surface-water of said street into said sewer and carried the same into White Clay creek. The cost of said sewer was paid by all the property-holders of the city of Atchison, a levy having been made therefor by the council, upon all the property of said city.

"4. At the time said sewer was constructed, there was a rock drain in the alley in block 14, on the west side of Fourth street, which extended westwardly about half way of said block, which old rock drain was, at the time of the construction of the said brick sewer, turned into and connected with the west arm of said brick sewer. Afterward, in the year 1885, upon recommendation of the city engineer, the chair-

man of the committee on improvements of the council of the city of Atchison was ordered to and did lay, from the west terminus of said rock drain heretofore referred to, in the alley in block 14, an 18-inch pipe, westward through said alley to Fifth street, thereby making a suitable connection for sewerage purposes with the brick sewer on said Fourth street; which said last improvement was paid for by the city of Atchison, all property thereof contributing its proportion thereto.

"5. On the 6th day of February, 1888, ordinance No. 854 was passed by the council of the city of Atchison, entitled 'An ordinance authorizing the mayor and clerk to enter into a contract with Rosewater & Christie to furnish said city with plans and specifications for a complete sewer system,' which said ordinance was passed February 6, 1888, approved February 8, and was published February 9, 1888. In pursuance of said ordinance, on the 16th day of February, 1888, the then mayor of Atchison and clerk did enter into a contract with Messrs. Rosewater & Christie to prepare and furnish said city with plans, specifications and estimates for a complete sewerage system of said city, which said sewerage system, with plans and specifications and a map thereof, was duly prepared and furnished by said Rosewater & Christie on the 1st day of June, 1888, in pursuance of their said contract, for which said city paid the said Rosewater & Christie the sum of $1,995.

"6. No ordinance was ever passed by the mayor and council of the city of Atchison establishing or forming sewer districts, unless it be ordinance No. 854, referred to in the conclusion of fact No. 5.

"7. On the 20th day of May, 1889, the city council of the city of Atchison passed a resolution as follows: '*Resolved*, That it is necessary to at once commence the construction of the Fourth street sewer, it having been made a separate sewer under the plans of the Rosewater & Christie system of sewerage.' No publication of this resolution was made except the publication of the council proceedings of said May 20, which was published in the *Atchison Champion* on the next day, to wit, the 21st day of May, 1889. On June 3, 1889, the city clerk was instructed by the city council to advertise for bids for the construction of the north Fourth street sewer, and the city engineer was ordered to prepare plans, specifications and estimates of the work, which was accordingly done, and which estimates included —— cents per foot for superin-

tending, engineering and contingencies, and they were afterward filed in the office of the city clerk on the 8th day of July, 1889, duly sworn to by the city engineer. On the 6th day of June, 1889, the city clerk, in pursuance of the resolution of June 3, caused a notice to be placed in the Atchison *Daily Globe*, the official newspaper of said city, for bids for the construction of the north Fourth street sewer, for the period of ten days, and no bids were received. And thereafter, on June 25, 1889, the city clerk, in pursuance of the resolution of June 3, caused another and second notice of and advertisement for bids for the construction of the north Fourth street sewer to be made in the Atchison *Daily Globe* of that date, for the period of ten days; and in this and all other like notices the city reserved the right to reject any and all bids. And thereafter, on the 8th day of July, 1889, the bid of John Shaw and Oscar Downing, partners as Shaw & Downing, for the construction of said Fourth street sewer system under the estimate of the city engineer, was received and accepted, and the contract awarded to said Shaw & Downing, the amount of said contract to be paid by the city in cash or bonds at the option of the city of Atchison. And on said July 8, an ordinance (No. 1019) was duly passed by the mayor and councilmen of the city of Atchison, authorizing the mayor and clerk to enter into a contract with Shaw & Downing for constructing the north Fourth street sewer system.

[Ordinance omitted.]

"And thereafter, on the 20th day of July, 1889, in pursuance of said ordinance, the mayor and clerk duly entered into a contract with said Shaw & Downing for the construction of said north Fourth avenue sewer system, to commence at the termination of the brick sewer, near the south line of the alley between Commercial street and Kansas avenue, thence extending north along Fourth avenue to the line of the center of the alley running east and west between Riley and Mound streets, together with all lateral sewers, in accordance with the plans thereof on file in the office of the city engineer; and that in pursuance of said agreement as hereinafter shown, said Shaw & Downing constructed said north Fourth avenue sewer to the acceptance of said city.

"8. At the meeting of the council July 8, 1889, and before the contract for constructing the Fourth avenue sewer was awarded to Shaw & Downing, a remonstrance signed by a majority of the resident property-owners in the territory

sought to be assessed for the construction of said sewer, outside of block 14, was presented to the council and ordered received and filed.

"9. No ordinance was passed by the city council of the city of Atchison appropriating or setting apart a fund for the payment of the construction of said Fourth avenue sewer before the commencement of the work, and there were no funds in the city treasury at that time applicable for that purpose, and this sewer is the only one constructed since the Rosewater & Christie system was made.

"10. On July 26, 1889, by resolution, the mayor and council of the city of Atchison duly appointed Henry Denton, Philip Krohn and H. T. Smith as three disinterested appraisers, to make a true and impartial assessment of all lots and pieces of ground liable under the law for the payment of special assessment for the work of building the Fourth avenue sewer, without regard to buildings or improvements thereon, and that the engineer be instructed to immediately prepare a plat showing the lots and pieces of ground liable to said appraisement, and file the same with the city clerk for the use of said appraisers. And thereupon the city engineer of the city of Atchison made out and furnished to said appraisers a list of all the property-owners, together with a description of their property, in the territory in which said sewer is constructed, from Commercial street in said city north to Mound street, and from the center of Third street on the east side of Fourth avenue to the center of Fifth street on the west side of Fourth avenue, together with a map of said territory, showing the property benefited by the construction of said Fourth avenue sewer, a copy of which said map is hereto attached.

"11. Said appraisers, on the 31st day of July, 1889, in pursuance of their appointment, were duly qualified as such appraisers by taking the oath required by law, and thereupon proceeded to the discharge of their duties, and made report in writing of their appraisement, which was duly filed in the office of the city clerk on the 17th day of August, 1889.

"12. In the list of property, together with the owners thereof, which was furnished to the appraisers for the purpose of valuation for assessment for the construction of said sewer, block 17, lying between Main and Commercial streets, and abutting upon said Fourth avenue, and also block 14, except the north fifty feet of lots one and two, and the south

twenty-five feet of the north half of lots one and two, were not placed upon said list, and were not valued by said appraisers for assessment for the construction of said north Fourth street sewer, although said blocks are drained and benefited by the said sewer, and are a part of the territory under the Rosewater & Christie system.

"13. In the list of property, together with the owners thereof, prepared for the use of said appraisers as hereinbefore stated, the following property upon said list was erased therefrom, by drawing red ink lines across the same and marking thereon in red ink the words 'not liable,' and which property is as follows: The north 70 feet of lots 5, 6, and 7, in block 13, in the name of John M. Price, and is the same property upon which the Price Opera House in said city is situated, the south 90 feet of the west half of lot 14, in block 13, in the name of Manuel Frank. This property cannot be connected with the lateral of said sewer, which runs through the alley in the center of block 13, without going through or over other property, because the north 60 feet of said lot No. 14 is owned by another individual, to wit, A. G. Otis. The north 22 feet of the south half of lot No. 8, in block No. 7, in the name of Mary Kinney, was not assessed for the reason it could not be connected with said sewer only by going through or over other property owned by other parties. The west 25 feet of the south 50 feet of lot No. 8, in the name of W. W. Guthrie, and on which property is located what is known as the 'Pioneer Hall building,' was not assessed. The north half of lots 1, 2, and 3, in block 63, in the name of L. Friend, was not assessed because it cannot be connected with said sewer without going through or over other property owned by other parties. The north 90 feet of lots 6 and 7, in block 64, in the name of Mrs. M. W. Horan, was not assessed, because no connection with said sewer could be made therefrom without going through or over property not owned by her. Lot No. 13, in block 74, in the name of S. A. Frazier, was not assessed, because such lot was so much lower than the lateral of said sewer on which it abuts that it would be impossible to connect it with said sewer. All of which said property was not assessed by said appraisers, and no valuation was placed thereon at the time they filed their said report in the office of the city clerk, to wit, the 17th day of August, 1889.

"14. After the report of the appraisers was filed in the office of the city clerk, the appraisers were notified by the city clerk

to appear at the city clerk's office and make some corrections in their report which had been filed, and thereupon, on the 26th day of August, 1889, Henry Denton and H. T. Smith, two of the appraisers, met at the city clerk's office, whose action in the matter was afterward approved by Dr. Philip Krohn, one of the appraisers, who met them at the foot of the stairs immediately after it was done, and the property of John M. Price, to wit, the north 70 feet of lots 5, 6, and 7, in block 13, and the property of W. W. Guthrie, to wit, the west 25 feet of the south 50 feet of lot 8, in block 8, which had been placed upon the list furnished them as not liable, was placed thereon by said appraisers, and each of said pieces of property respectively was valued at the proportion fixed upon the balance of said lots, which the appraisers had agreed should be the amount when they were determining their assessments upon all other property furnished them, and the same was at that time inserted in their report.

"15. The property of John M. Price, hereinbefore described, and known as the 'Opera House property,' and the property of W. W. Guthrie, hereinbefore described, and known as the 'Pioneer Hall building,' after the construction of the old circular brick sewer, had been connected with it by a private sewer from each of said pieces of property at their own expense, in the sum of $240; each of said pieces of property respectively lies on the east side of Fourth street separated only by Kansas avenue, and each abuts on said Fourth street.

"16. After the construction of the old circular brick sewer, a private sewer or drain was constructed in the alley in the center of block 13, from lot 11 in said block, by Kathrens, to connect with the east wing at the corner of the alley with said old sewer, and with which sewer or drain, by permission of Kathrens, A. G. Otis, the owner of the east half of lot 10 in said block, connected therewith. The east half of the south 90 feet of lot No. 14, in block 13, is owned and has been for many years by Amelia J. Otis, and the north 60 feet of said lot 14 is owned by A. G. Otis, and A. G. and Amelia J. Otis are husband and wife, and Amelia J. Otis can only connect with said sewer over or through the property of A. G. Otis. There is no recorded plat showing any subdivision of this lot.

"17. On the 21st day of August, 1889, a notice was published in the Atchison *Daily Globe*, for ten days, which was a notice of the report of the appraisers, and that the city

council would sit as a board of equalization on the 2d day of September, 1889; a copy of which is as follows:

[Notice omitted.]

"18. On the 2d day of September, 1889, the council met as a board of equalization and heard complaints from property-owners, and adjourned until September 4th, when there being no quorum present they adjourned until September 6, when they met a number of the property-holders before them, among them A. G. Otis, A. H. Lamphear, C. D. Walker, A. D. McConaughey, E. S. Earhart, attorney for property-holders, W. W. Guthrie, who appeared for himself and John M. Price, whose property was in a similar condition to his own, and objected to their property being included, because not legally assessed and already having sewer facilities, and did not further appear, H. R. Bostwick for the Burnes estate, A. F. Martin, attorney, appeared for J. A. Harouff, and Henry Luth, J. P. Adams, S. A. Frazier, and a number of others; and after hearing the complaints, the council adjourned until September 16, when they again adjourned, there being no quorum present, until September 23, 1889, when they met as a board of equalization; and after a consideration of all complaints which had been made to them, all of which said complaints were mainly to the amount of the assessment of property, except the complaint of W. W. Guthrie, for himself and John M. Price, whose property was similarly situated with his own, who claimed they ought not to be assessed because they had already built private sewers upon their properties at their own expense. And all said complaints were disallowed by the said board of equalization, except the complaint of A. D. McConaughey, the assessment of whose property was reduced at said meeting, and the report of the appraisers was adopted.

"19. Shaw & Downing, in pursuance of their contract entered into with the mayor and city clerk on the 20th day of July, 1889, as hereinbefore stated, commenced and constructed of said sewer according to the plans and specifications on file in the office of the city engineer, and the construction of the same was prosecuted by them without delay, under the supervision of an inspector appointed specially by the city authorities, in connection with the city engineer, and accepted by said city through its engineer, about December 2, 1889.

"20. The north Fourth avenue sewer, as constructed by said Shaw & Downing, commences at the north terminus of

the old brick sewer, into which it empties, twenty-nine and one-half feet south of the south line of the alley running east and west through blocks 13 and 14, and runs north in the center of Fourth avenue, with its laterals east and west, into the alleys between the blocks, with its man-holes and catch-basins, on each side of Fourth street, to the alley between Riley and Mound streets. The laterals connect directly with the main sewer. In addition to the laterals which are laid in the alleys midway of the blocks as you go north from the north terminus of the old brick sewer, to the alley between Mound and Riley streets, there are also laterals constructed in Kansas avenue, Santa Fé, Kearney and Riley streets, which also connect with the main sewer; and in all the laterals, and in many instances in the main sewer, openings have been made with which each and every piece and parcel of ground within the territory drained by said sewer private sewers from said pieces of property can be therewith connected; catch-basins on each side of said sewer located at all the cross streets, for the purpose of conducting the surface-water off, are connected with the main sewer by separate pipes, and do not in any case run into the laterals. The fall from the alley between Mound street and Riley street, south of where the sewer empties into the old brick sewer, is one foot in every twenty-four feet; the main sewer, from where it commences at the north terminus of the old brick sewer, is built of glazed sewer-tile pipe, the first pipe laid being twenty-four inches in diameter, the next twenty inches in diameter, the next eighteen inches in diameter, the next fifteen inches in diameter, and the next eight inches in diameter, respectively, as you go north to the crest of the elevation. The laterals are constructed of glazed sewer-tile pipes, eight inches in diameter, and said sewer is abundantly and amply sufficient in capacity to carry off all drainage from property and surface-water which in the ordinary course of things would fall upon or be carried away in said territory. The alley at the north terminus of said Fourth street sewer, between Mound and Riley streets, is at the crest of the surface of earth at that place; beyond and north of it the water naturally flows into another depression. Fifth street on the west side of Fourth avenue is now a paved street, oval and highest in the center, and no water on the west side of Fifth street will flow into the territory drained by this sewer from the west side of said street, but will naturally flow westward into another depression of the ground. All surface-water

20 — 45 KAS.

and drainage on the east side of Third street in said city naturally flows from the topography of the ground into another depression of earth, which is naturally drained into the Missouri river, with the exception perhaps of a few isolated pieces of property from which the surface-water might flow over and across said Third street and into the territory drained by this north Fourth street sewer.

"20½. In the construction of said north Fourth street sewer, the private sewer which had been made heretofore with the Opera House, the property of John M. Price, and the building known as the Pioneer Hall building, the property of W. W. Guthrie, and which crossed said Fourth street to the west side thereof, was connected with the present new Fourth street sewer at the point in said Fourth street where it crosses the same, without their knowledge.

"21. Lot No. 8, in block number 13, which lot is on the east side of Fourth street and abuts thereon, owned by Anna M. Marbourg, was connected with the old brick sewer by a private sewer constructed about a year prior to the commencement of the construction of the present Fourth avenue sewer, by the owner of said lot at her own expense.

"22. The lots in block 14 in an unimproved condition are worth from 25 to 40 per cent. more than the corresponding lots in block 13, and the improvements of block 14 are much better than those in block 13; and the lots in block 17, unimproved as well as improved, that is, taking into consideration the buildings thereon, are about the same as block 14, and are worth from 25 to 40 per cent. more than lots in block 13. The lots in block 18 are of about the same value as the lots in block 13, unimproved, and the improvements thereon are of about the same value as those in block 13. The south half of block 13, and which abuts on Commercial street, is improved with buildings for the purpose of carrying on trade and business therein, and on the north half of said block 13 is the Opera House building; the south half of block 14, abutting on Commercial street, is improved with buildings suitable for carrying on business and trade, as well as the greater part of the north half of said block 14. Outside of the two blocks just mentioned, 13 and 14, the balance of the territory drained by said sewer consists of vacant lots and private residence property.

"23. Of the parties plaintiff in the actions herein, the following-named persons, during the time said sewer was being

constructed, and since and before the commencement of this suit, made connection of their property with the said sewer, as follows:

Ella J. Fisk, two houses; L. Kiper, two houses; Anna Moore, four houses; Mrs. K. D. Shipley, George Searles, John Beltz, John Perkins, F. W. Downs, and George Tofte.

"24. The total cost of said sewer amounted to the sum of $11,516.41, which includes $2\frac{15}{100}$ per cent. of the cost of the work, which was allowed for engineering and superintending the said sewer, and paid by the city of Atchison, to be reimbursed from special levy. The estimated cost of the work, as made by the city engineer and filed in the office of the city clerk, amounted to $13,047.28.

"25. On the 28th day of October, 1889, ordinance No. 1097 was passed by the city council of the city of Atchison, approved by the mayor, and published as required by law, and is as follows:

[This ordinance, which determined the amount of special assessments to be charged against the different parcels of property, and provided for the issuance of internal-improvement bonds, is omitted.]

"26. The city of Atchison electing to pay the contractors Shaw & Downing for the construction of said sewer as under its contract it had the option so to do, had printed and was about to dispose of, in pursuance of section 3 of ordinance No. 1098, internal-improvement bonds of the city of Atchison, bearing seven per cent. interest, payable semi-annually, and covering a period of ten years, payable in annual installments, one-tenth of the principal, with the interest due on the unpaid principal on the bond each year, which said bonds shall have proper coupons attached thereto and shall be of such denominations as the mayor shall deem proper, to the amount of $11,500, for the purpose of paying for the Fourth avenue sewer in said city, and in due time the city of Atchison will cause to be levied upon the lots and parcels of lots as described in said ordinance No. 1097, annually such assessments as will meet the payment of such internal-improvement bonds, as they shall fall due respectively, with the interest thereon for the period of ten years next ensuing. A blank form of said series of said internal-improvement bonds is hereto attached.

"27. After the passage of ordinance No. 1097, the city clerk caused notices to be sent to all lot-owners mentioned in

the report of the appraisers, one of which said notices was sent to W. W. Guthrie, and is as follows:

[Notice omitted.]

· "28. Said Rosewater & Christie made a complete survey of said city, including the sewers and parts of sewers already put in, which then consisted of the said Fourth street sewer with its laterals, connections in alley in block 14 so far as completed, and a sewer reaching from White Clay creek north up Sixth street with some lateral connections, and a sewer reaching from the river up Third street with some lateral connections, and made their system of sewerage to discharge into White Clay creek, and then reaching therefrom so far as the natural connections could be made therewith, and otherwise discharging into the Missouri river, and made a map, locating such sewerage system thereon and showing same as hereinbefore stated, and the most of the sewerage of said city thereby to empty into White Clay creek, or the main sewer to take its place, and so discharge into the Missouri river, and showing contemplated extensions of said Fourth street sewer north, with laterals reaching to Third and Fifth streets on each side, substantially as afterward completed, and showing the extension of the said Sixth street sewer north, with lateral connections reaching to Fifth and Seventh streets on either side, and so throughout the city, providing for sewerage into White Clay creek, or the sewer to take its place, according to the natural trend of the ground. The original map of said system of sewerage, now on file in the city engineer's office, is here referred to and made a part hereof.

· [Form of the improvement bonds and map and plan of the Fourth street sewer are omitted.]

"29. The construction of the Fourth avenue sewer was a matter of general notoriety throughout the city of Atchison, and each and all of the plaintiffs, in common with all other citizens, had knowledge of its construction, and no suit was · brought until these actions were commenced, which was after the completion of the same and its acceptance by the city engineer of said city.

"30. At and for long prior to the making of the contract between the defendant, the city of Atchison, and its co-defendants, John Shaw and Downing, partners as Shaw & Downing, the bonds of the character of those sought to be issued by the city for the purpose of raising money to pay for the construction of the Fourth avenue sewer were generally known

to be below par, and the city had never been able to dispose of bonds of such character and corresponding value, except by allowing the purchaser two per cent. commission for taking them at their par value, which two per cent. when paid was paid by the city out of its general-revenue fund. In this case the city had the option under the contract to pay in cash or bonds, and the contractors had elected to take the bonds at their par and face value, and the city had elected so to deliver them."

"CONCLUSIONS OF LAW.

"1. The proceedings of the mayor and council adopting the Rosewater & Christie system of sewerage for said city were valid.

"2. The action of the city council in directing the city engineer to prepare plans, specifications and estimates for the construction of the Fourth street, or Fourth avenue, sewer, it having been made a separate sewer under the Rosewater & Christie system of sewerage, was valid and in substantial conformity with law.

"3. The estimates submitted by the city engineer for the construction of said sewer were in substantial conformity to the law, and therefore valid.

"4. The contract entered into between the city and the contractors for said work was in substantial compliance with law, and therefore valid.

"5. The appraisement and valuation of the property for the purpose of levying a tax thereon for the payment of said sewer were in substantial compliance with law, and valid.

"6. The proceedings of the mayor and council of said city, in charging and assessing the amounts against the property of the plaintiffs for the cost of said sewer are void, for the reason that blocks fourteen (14) and seventeen (17) are omitted from said charge and assessment for their appropriate share of the costs of said sewer."

The defendants moved for judgment in their favor and against the plaintiffs upon the conclusions of fact, notwithstanding the conclusions of law, and also to set aside the conclusions of fact and law and grant a new trial — both of which motions were overruled. The plaintiffs in each of the cases moved for full judgment and decree upon the conclusions of fact, the conclusions of law to the contrary notwithstanding,

and also filed motions to set aside and vacate the conclusions of fact and law as found and stated by the court, and for a new trial of the actions — all of which motions were overruled. The court thereupon, and for the reasons stated in the 6th conclusion of law, adjudged and decreed that the defendants be enjoined from issuing any installment-improvement bonds of the city of Atchison, or from making any levies of special-improvement taxes against the properties of the plaintiffs in any one of the three actions, to pay for the construction of said sewer. The defendants bring the case to this court for review.

*H. C. Solomon,* city attorney, for plaintiffs in error.

*W. W. & W. F. Guthrie, Henry Elliston, J. P. Adams,* and *Martin & Newell,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: The decision and decree of the court holding the special taxes to be illegal, and enjoining the making of any provision for their payment, is placed upon the failure of the city and its officers to make an assessment upon the property in blocks 14 and 17 for a proportion of the cost of the sewer. The other conclusions are against the defendants in error, and although they excepted to the rulings adverse to them, and asked for a new trial, they have presented no petition or cross-petition in error, asking for a review of such adverse rulings, as they might have done.

The property in blocks 14 and 17 which was omitted from the assessment is contiguous to another sewer, which, with laterals now built or that may be built, will afford adequate sewer facilities for the occupants of these blocks. The same may be said of block 18, which is in a similar situation. The property omitted from the assessment in these blocks was not accommodated or benefited by the construction of the new sewer, and such taxes can only be imposed in proportion to the special benefits received. A part of lots 1 and 2, in block

14, which could not be reached by the sewer already constructed, and which was so subdivided as to abut on the new sewer, was benefited, and was properly assessed. It is contended, however, that no sewer district was ever created or defined by which the expense of the construction of the sewer could be placed exclusively upon the owners of the territory upon which the assessment was made by the city council; but that if there was a distinct sewer district which might be held liable for the entire cost of the sewer, that it extended south to White Clay creek, and included blocks 14, 17, and the most of 18, as also the other property within this territory.

It appears that in 1884 a six-foot brick sewer was built from White Clay creek and Main street, northward, along the center of Fourth street, for a distance of a block and a half, and to a point twenty-nine and one-half feet south of the alley running through blocks 13 and 14, with wings extending to the ends of the alleys in said blocks, and on either side, and a lateral sewer was afterward constructed through the alley in block 14, which emptied into the brick sewer. This improvement was made at the expense of all the taxpayers of the city. The sewer in question, which was constructed in 1889, connected with the brick sewer, and extended from the connection, northward, along the center of Fourth avenue, near to Mound street, with laterals through the alleys of the blocks on either side, thus draining the territory from Third to Fifth streets.

It is claimed that the new sewer is simply an extension of the one built in 1884, and that the entire territory between Third and Fifth streets, from White Clay creek northward to Mound street, constitutes a sewer district, and that the special taxes should be apportioned to the entire property within that district. The district court appears to have adopted the view that this territory should be treated as a distinct district, and that the exemption of the property in blocks 14 and 17 from contributing toward the cost of the sewer rendered the assessment that was made illegal.

We think this entire territory is not to be treated as a single district, and that the exemption of the property not assessed in blocks 14, 17 and 18, which is and may be accommodated by the brick sewer built prior to 1889, did not invalidate the assessment that was made. A general system of sewerage for the entire city has been adopted, and the construction of the whole at once may be impracticable and unnecessary. The fact that a sewer constructed in one district or portion of the city connects with or is an extension of another already constructed, does not make the territory drained by both a single and distinct district, nor does it require that all the property within that territory shall be assessed for the sewer last constructed. It is for the city to determine how early and rapidly the system shall be completed, and any section or extension of the system may be built whenever it is deemed necessary and expedient. When a section or extension is made, the territory drained and specially benefited by the construction of an extension or section, however small, may be regarded as a district. A lateral running through an alley of a single block, and connected with another sewer, may be constructed by the city, and the territory specially benefited will alone constitute a district upon which the entire cost of the lateral may be assessed. In this case only the property contiguous to the new sewer and specially benefited by it was assessed for its cost. To have apportioned any share of the expense to the omitted property in blocks 14 or 17, would have been palpably unjust and illegal. The owners of the lots not assessed received no benefit from the extension of the sewer, and as has been said, "only those whose property is specially benefited by the improvement can be compelled to pay such taxes. Special taxes to pay for sewers and drains can be levied only upon the property of persons who can use such sewers and drains, and not upon persons who cannot use them. And the taxes should be apportioned in accordance with the special benefits received by each individual severally." (*Gilmore v. Hentig*, 33 Kas. 167.) Even property that may be within the exterior lines

2. Sewer last constructed— cost—what territory liable.

or boundaries of what may be called a district, but which does not abut on the sewer, or from the topography of the ground or other cause cannot be drained or specially benefited by the sewer, cannot be specially assessed or taxed for its construction. It is not required, nor is it necessary that the boundaries of a sewer district shall be defined by an ordinance, and indeed the statute contemplates that sewers may be constructed by districts or otherwise. (Gen. Stat. of 1889, ¶ 563.) When a sewer system is adopted and is being built by districts, it is then important that the records shall show the territory or property assessed for any part of the sewer which is constructed, so that it shall not be again assessed for a sewer in another portion of the city. When property has paid its full proportion for a sewer in a certain territory or district, it cannot be transferred to another district, nor held liable for the construction of sewerage facilities in another district of the city. So far as the sewer in controversy is concerned, the public records sufficiently show the extent of the district, as well as the property benefited and assessed for the sewer, and no dispute can arise in the future in this regard. Under an ordinance adopted in 1888, the city of Atchison was authorized to and did enter into a contract with certain engineers to furnish the city with plans and specifications for a complete sewer system. In pursuance of this contract, maps, plans and specifications were duly prepared and furnished, which were paid for by the city. The system thus provided was adopted by the city, and the Fourth street sewer was made a separate one under the plans and system provided. These plans and specifications, together with the map made and furnished by the city engineer, and the assessment which has been made, sufficiently indicate the existence of the district and the property taxed to fully protect the tax-payers from a second assessment for the same purpose.

The further fact referred to by counsel, that a short section of the sewer was formerly built at the expense of the city, is

1. City—constructing sewers—districts—tax.

no objection to the validity of the assessment made in this case. We might stop here, as the other points were decided against the defendants in error and they have taken no steps to obtain a review of such rulings. It will not be improper, however, to briefly notice other of the objections to the assessment urged in the district court and somewhat discussed here.

Some of the defendants in error had constructed private sewers or drains at their own expense, and they now claim that they should not be taxed for the sewer built by the city. While one of these drains was quite expensive, it is not found or stated that any of them were authorized or adopted by the city as a part of the sewer system, nor that they are suitable or adequate for the purposes intended. The legislature has conferred upon the city authorities the discretion and power to provide sewerage facilities, and for that purpose has given them control of the streets and alleys where the sewers are built. They are to determine the necessity for sewers, as well as the character and capacity of those that are required to be built. To allow property-owners to decide for themselves whether their lots needed sewerage facilities, or to permit them to provide private ditches, drains, sewers, or cesspools as they might determine to be sufficient, would be wholly impracticable and would prevent the adoption of a general sewerage system under the control of the city, as the statutes evidently contemplate. The property of those who had built private sewers adjoined upon the new sewer, and we think the district court ruled correctly in holding their property liable to contribute toward the construction of the sewer.

3. Private sewers, not adopted by city.

Another objection to the assessment was, that the east half of lot 14, in block 13, was assessed, although the whole of the same was not owned by one person. It is stated that Amelia J. Otis owned the south 90 feet, while her husband, A. G. Otis, owned the north 60 feet of the half lot; and it is said that she cannot avail herself of the benefits of the sewer except by passing over the property of her husband. In ad-

dition to the fact that the question was not properly brought
here, a sufficient answer to this objection is, that
there is no recorded plat showing any subdivision
of this lot, or that the frontage of the same had
been changed; and it does not appear that any of the public
records showed that the title to the lot was in more than one
person at the time the proceedings were taken and the assess-
ment made.

4. Lot—two
owners—lia-
bility.

A remonstrance of a large number of the property-owners
was filed with the city council before the letting of the con-
tract for this sewer, and under the provisions of ¶ 558 of the
General Statutes of 1889, it is suggested that this is a ground
of objection to the assessment. The provisions of this statute
apply only to paving and macadamizing a street, and the mak-
ing of assessments therefor, and is not applicable to the build-
ing of sewers. We find no statute authorizing
the filing or considering of such a remonstrance
where sewers are about to be built. Neither the preliminary
proceedings nor the mode for the apportionment of such taxes
is fully prescribed by the statute; the council is therefore
left to adopt such proceedings and mode of apportionment as
will be fair and equitable. An examination of the proceed-
ings, which have been set out at length in the statement of
facts, leads us to agree with the conclusion of the court, that
the proceedings were fair and in substantial compliance with
law. The city council first adopted a resolution that the con-
struction of the sewer was necessary, and this resolution was
published. Under the direction of the city council, the city
clerk advertised for bids for the construction of the work,
and the city engineer prepared plans, specifications and esti-
mates of the work, which were filed in the office of the city
clerk. Bids were received, and one made by Shaw & Down-
ing was accepted and the contract awarded to them. The
compensation for the work was to be paid by the city in cash
or bonds, at the option of the city; and in pursuance of an
ordinance duly enacted, the mayor and clerk entered into a

5. Statute, not
applicable.

contract with Shaw & Downing for the construction of the
sewer.   The estimate of the cost of the sewer, made by the city
engineer, was $13,047.28, while the contract price was $11,-
500.   In pursuance of a resolution, appraisers were appointed
to make an assessment of all lots and pieces of ground liable
to assessment, without regard to buildings and improvements
thereon, and after their appointment and qualification they
proceeded to the discharge of their duties, and made a report in
writing of their appraisement.   This report was subsequently
amended and corrected.   Thereafter, and upon due notice,
a board of equalization met to hear any complaints which
might be made of the appraisement, and all the property-
owners were given a fair opportunity to test the fairness and
validity of the valuation and assessment that were made.
Quite a number of the property-owners appeared and pre-
sented objections, but these were mainly disallowed, and the
report of the appraisers, with one correction, was adopted.
The contractors commenced the construction of the sewer and
prosecuted the work without delay, under the supervision of
an inspector appointed by the city, in connection with the city
engineer, and the work was completed about December 2,
1889, at a total cost of $11,516.41.   All of the complaining
parties knew that the sewer was being constructed, and quite
a number of them connected with the sewer during its con-
struction, and since, and are now using the same, and these
legal proceedings were not begun by any of them until after
the completion of the work and its acceptance by the city.
It thus appears, that before the tax was made a permanent
charge upon the property, the owners had full notice of the
proceedings, and had an opportunity to contest the validity
and the fairness of the valuations and assessments that were
made.

An objection was also made that the cost of the construc-
tion of the sewer and the assessments made to pay the same
included an item for the expense of engineering and superin-
tending the construction of the sewer.   The entire expense

of such an improvement is to be charged to the property pecul-
iarly benefited, and the engineering and supervi-
sion of the work are as essential as the excavations

6. Expense—
   extent of
   burden.

to be made, and we see no reason why the ex-
pense of the same should not be included in the assessment.
(Gen. Stat. of 1889, ¶ 563; *In re Lowden*, 89 N. Y. 548;
*City of St. Paul v. Mullen*, 27 Minn. 78; *In re Tappen*, 36
How. Pr. 390; *The State v. Council of Elizabeth*, 30 N. J. L.
365.)

The validity of the tax proceedings was assailed upon the
ground that there were no funds in the treasury at the time
with which to pay for the improvements, and that no ordi-
nance had been enacted setting aside in the city treasury the
money to pay therefor; and reference is made to the 40th sub-
division of ¶ 555, Gen. Stat. of 1889, and also to § 3, ch. 34,
of the Laws of 1883. The provisions of the statute cited,
however, are not controlling. Whatever might be the rule
where the improvements are to be made by a general tax levy,
it is clear that the legislature has provided specifically for the
construction of improvements at the expense of the abutting
property, and to pay the costs thereof by installments, and
that for such installments they may issue improvement bonds
of the city, to run not more than ten years, nor to bear inter-
est exceeding 7 per cent. per annum. These bonds may be
issued to the contractor in payment of the improvement,
and provision is made for the levying of special assessments
upon the property specially benefited for the redemption of
such bonds. This is a later act of the legislature,
and is framed upon the theory that the work shall

7. Bonds to pay
   for sewer.

be done upon credit and when there is no money provided
or set apart for the payment of the same. (Laws of 1887,
ch. 101.)

There are no other objections which we deem it necessary
to notice. From an examination of the record, we are satis-
fied that the tax proceedings are in substantial compliance
with law and should be sustained, and that the injunction
prayed for should be denied.

The judgment of the district court will be reversed, and the cause remanded with directions to enter judgment on the findings in favor of the plaintiffs in error.

All the Justices concurring.