No. 27,757.

T. J. Botts et al., *Appellants*, v. The City of Valley Center et al.,
*Appellees.*

(257 Pac. 226.)

SYLLABUS BY THE COURT.

1. Municipal Corporations—*Organization of Sewer District—Validity.* The
organization of a sewer district in a city of the third class was not vitiated
because a considerable number of unimproved town lots facing on a platted
but unopened and unused public street, all belonging to one owner who
could not afford to pay the sewer assessments, was not included within the
limits of the sewer district, nor because some of the members of the city
government held the debatable view of the law that in the future when
those vacant lots were sold for homesites to individuals they could then be
included in the sewer district and subjected to special assessments for its
improvement.

2. Same—*Organization of Sewer District—Grounds for Injunction.* The in-
clusion of two lots within the district which would not be benefited by the
construction of the sewer, according to proposed sewer system shown by a
plat of questioned accuracy, which inclusion was not shown to have been
made through bad faith or for any invidious motive, was not sufficient to
justify or permit the construction of the sewer system to be enjoined.

3. Same—*Assessment for Benefits—Remedy of Property Owner.* Where a tract
of property is included in a district organized for the purpose of construct-
ing special improvements therein, but cannot be benefited by the proposed
improvement, the owner's recourse is not an action to enjoin the construc-
tion of the entire improvement, but an action to enjoin an assessment on
his property to pay for such improvement, following *Gilmore, County Clerk,
v. Hentig,* 33 Kan. 156, syl. ¶ 1, 5 Pac. 781.

4. Same— *Special Meetings of Governing Body — Validity.* Where a special
meeting of the mayor and council of a city of the third class was called at
the written request of three members of the council for the transaction of
business pertaining to the projected sewer system, the absence of a member
of the council who was sick and in a distant hospital, and of another mem-
ber who was notified of the meeting by telephone and had time to attend
but failed to do so, and who had the habit of not attending the meetings of
the city council, the mayor and those present, being a quorum, could pro-
ceed with the transaction of public business; and an ordinance pertaining
to the projected sewer system and a contract awarded for its construction
were proper matters of public business to be transacted at such special
meeting, and not subject to interference by injunction.

Drains and Sewers, 58 L. R. A. 358; 26 L. R. A. n. s. 1153; 9 R. C. L. 658.
Municipal Corporations, 28 Cyc. pp. 327 n. 42, 46, 329 n. 54, 330 n. 62, 65, 1003
n. 6, 1008 n. 59 new, 1039 n. 28, 1178 n. 51, 1185 n. 21, 1186 n. 25; 19 R. C. L. 888.

5. SAME—*Construction Contract—Necessity of Formal Ordinance.* The formality of enactment and publication of a city ordinance is not required to legalize the awarding of a contract to construct a sewer system in a city of the third class under R. S. 15-701 *et seq.*

Appeal from Sedgwick district court, division No. 4; ISAAC N. WILLIAMS, judge. Opinion filed June 29, 1927. Affirmed.

*Robert C. Foulston, W. E. Holmes, D. W. Eaton, George Siefkin, Sidney L. Foulston* and *Lester L. Morris,* all of Wichita, for the appellants.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, James G. Norton, W. E. Stanley* and *Glenn Porter,* all of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action by taxpayers to enjoin the construction of a sewer system in Valley Center.

Plaintiffs' objections to the projected improvement were based on the alleged grounds that the ordinance authorizing the creation of the sewer district and the contract let for its construction were illegal, and that favoritism and unjust discrimination inhered in the formation of the district whereby certain properties which would be benefited by the sewer were left out of the district, and some properties were incorporated therein which would receive no benefit from its construction.

The city and the construction company filed separate answers which traversed the material allegations of plaintiffs' petition.

On behalf of plaintiffs it was shown that certain town lots adjacent to one of the proposed laterals of the sewer system and contiguous to the eastern boundary of the proposed district had been left outside the district for the reason that the owner, G. R. Davis, had so many such lots that it would bankrupt him to pay sewer taxes thereon. It was also shown that the mayor, and perhaps some of the councilmen, were of opinion that although these lots were left out of the district for the present, they might later be added to the district when they were sold for home-sites to individuals. However, it was also shown that these lots were vacant and unimproved and faced an unopened and merely platted street near the outskirts of the city, and that the sewer system and its service would be of no present value to those lots.

It was also shown that two lots owned by one of the plaintiffs, J. W. Hemme, which were included in the district, were about a block and a half from the nearest sewer lateral, according to a plat

of the proposed system; but the accuracy of that plat was controverted, and while this lawsuit was pending in the court below an amended ordinance was adopted correcting what was either an inaccuracy in the plat or a discrepancy in the engineering plan, so that a lateral sewer is now provided which comes up the alley in the rear of Hemme's lots.

Touching the passage of the ordinance, which among other matters awarded the construction contract, it was shown that the mayor and three of the five councilmen met at the city hall at seven a. m. on March 10, 1927. One of the councilmen, L. E. Morris, was ill in a distant hospital, and another, Thompson, was not in the habit of attending council meetings and had only attended three or four such meetings in two years. The three councilmen present signed a written call for a special meeting of the council at the city hall at seven a. m. March 10, 1927, "to consider the protests filed against the sewer construction and to take such other proceedings in reference to the sewers as may be proper." This was presented to the mayor on his arrival at the city hall. The mayor called Councilman Thompson by telephone. Thompson said he did not know whether he could be present or not. The mayor and councilmen present waited half an hour and then opened the meeting, which lasted about an hour and a quarter, during which time they passed the ordinance and signed the contract. The early hour was set for the meeting for three reasons,—the city officials anticipated an injunction suit and were desirous to have the proceedings as far advanced as practicable before they were halted by such interference; the city engineer had to catch an early train that day for Texas on an important errand; and the attorney who was advising and assisting the city officials in the legal formalities pertaining to the proposed sewer system had business in court that morning at 9 o'clock.

The trial court gave judgment for defendants; and plaintiffs appeal, contending, first, that the omission of the Davis lots from the sewer district was arbitrary and fraudulent. The trial court did not think so. The boundary lines of the sewer district had to be placed somewhere, and of necessity some lots outside the district lay immediately adjacent thereto. Such were the lots of Davis. He had a considerable number of such lots, unoccupied and unused, and fronting on an unopened, unused street. Notwithstanding their

proximity to one of the proposed sewer laterals and their contiguity to the sewer district they would not be benefited for the time being by their incorporation in the sewer district, and the special sewer tax burden would be a hardship on Davis, and might, as the mayor and council believed, "break him." Neither was the district as created invalid because the mayor and council "thought" that later, if and when the Davis town lots were sold for home-sites, those lots could then be incorporated in the sewer district. This court is not convinced that such contemplated future action could not be taken, but the point need not now be decided. At all events the mayor and council were not greatly mistaken. If and when the Davis lots are attached to the sewer their owners will have to pay for that privilege, perhaps not technically in the form of sewer district assessments, but they will pay whatever amount is equitable and proper for permission to connect with the sewer. There was no apparent abuse of discretion in fixing the boundaries of the sewer so as to omit therefrom the Davis lots, and that matter was vested in the discretion of the city government, not in the courts. (R. S. 12-617 *et seq.; Hildreth v. City of Longmont,* 47 Colo. 79. See, also, *Warner v. City of Independence,* 121 Kan. 551, 558, 247 Pac. 871.)

It is also contended that the ordinance and contract of construction were vitiated because the Hemme lots were included in the sewer district, when according to the proposed locations of laterals they would not be benefited. But it seems just to accept in good faith the explanation of the city engineer and the mayor that it was not intended that there would not be a sewer lateral in convenient proximity to Hemme's lots; and it was asking quite too much of the trial court to enjoin this entire sewer system even if Hemme's two lots are not to be benefited and are included within the district confines. If they are not to be benefited, no lawful assessment can be levied against them. (*Gilmore, County Clerk, v. Hentig,* 33 Kan. 156, syl. 1, 5 Pac. 781.) But the inclusion of town lots within the district which cannot be benefited and which in consequence cannot be subjected to assessments to pay for the sewer does not invalidate the organization of the sewer district. (*Cohen v. City of Alameda,* 183 Cal. 519; *Aumiller v. City of North Yakima,* 73 Wash. 96; *Bass v. City of Casper,* 28 Wyo. 387, 205 Pac. 1008.)

Passing next to the attack upon the ordinance of March 10, and the contract of construction awarded at the special meeting that

morning, the fact is urged that the written call for the special meet-. ing was not signed by the three councilmen until they met at the city hall that morning. But the statute authorizing such meeting on the written request of three councilmen does not prescribe anything which was omitted in this call. It merely declares:

". . . Special meetings may be called by the mayor or acting mayor, on written request of any three members of the council, specifying the object and purpose of such meeting, which request shall be read at the meeting and entered at length on the journal. . . ." (R. S. 15-106.)

It is also urged that the notice of the special meeting of the mayor and council and the action taken thereat was "at such a time in the morning that no reasonable opportunity was given for all the councilmen to be present." Under the circumstances we think this ground of attack on the validity of the meeting and the official action taken thereat is not tenable. No reasonable length of time for notice would have brought about the attendance of the councilman who was sick in a distant hospital, nor would it have induced the presence of Councilman Thompson, who had sufficient notice but who merely did not attend because he was not in the habit of attending. In his telephone response to the mayor's communication Thompson did not intimate that if the meeting were put off for another hour or two he would attend. His unsatisfactory response to the mayor's telephone call was a sufficient reason for those present—being a quorum—to proceed after they had waited long enough for Councilman Thompson to get there if he were so inclined. The record gives no hint that if the quorum present had waited another hour, or two hours, or three hours, Councilman Thompson would have been on hand. While the rule is quite sound and proper that all the members of a city government, or of any other official body, should have a reasonable opportunity to attend a special or called meeting at which public business is to be transacted, that rule does not operate to prevent the expeditious dispatch of official business because of the absence of a member who is sick and unable to attend (*Knoxville v. Knoxville Water Co.,* 107 Tenn. 647, 61 L. R. A. 888), nor because of the absence of a member through his mere habit of nonattendance. (*State, ex rel., v. Kirk,* 46 Conn. 395; *Gale v. City of Moscow,* 15 Ida. 332; *Consolidated Sch. Dist. v. Griffin,* 201 Ia. 63; 28 Cyc. 327, 329, 330. See, also, *Hartzler v. City of Goodland,* 97 Kan. 129, 133, 154 Pac. 265.)

Plaintiffs finally contend that the contract for the construction

of the sewer was illegal because it was awarded immediately after the passage of the ordinance on May 10 and before its publication. The validity of the contract did not depend on the ordinance of March 10. There is no statute requiring such contracts to be awarded by ordinance in cities of the third class like Valley Center. The pertinent statute reads:

"When the governing body in any city of the third class in counties of more than 90,000 population [and Valley Center in Sedgwick county is such a city] which shall deem it necessary to . . . build or construct any sewer within the limits of the city, for which a special tax is to be levied, such governing body shall by resolution declare such work or improvement necessary to be done, and such resolution shall be published for three consecutive weeks in the official paper of the city, and if the resident owners of more than one-half of the property liable for taxation therefor shall not within twenty days from such last publication file with the clerk of such city their protest against such improvement, the governing body shall have power to cause such work to be done or such improvement to be made, and to contract therefor and to levy taxes as provided by law, and the work may be done before, during or after the collection of the special assessment, as may be deemed proper by the governing body . . ." (R. S. 15-702.)

There was no want of conformity with this statutory routine. A resolution declaring the necessity for the construction of a sewer system was adopted February 1, 1927, and published for three weeks beginning February 3. By March 10 the time for taxpayers to protest had expired, and there was then no legal impediment to the letting of the contract, and the publication of the city ordinance was not a prerequisite to the validity of the contract awarded on that date. (*Ransom v. Minnick,* 92 Kan. 953, 142 Pac. 934; *Smith v. City of Courtland,* 103 Kan. 142, 172 Pac. 1027. See, also, *Middleton v. City of Emporia,* 106 Kan. 107, 186 Pac. 981.)

This record discloses nothing which would justify a reversal of the trial court's judgment, and it is therefore affirmed.