No. 29,890.

THE CITY OF EUREKA, *Appellee,* v. THE KANSAS ELECTRIC POWER
COMPANY, *Appellant.*

(299 Pac. 938.)

Opinion filed June 6, 1931.

*Gilbert H. Frith,* of Emporia, *Thomas C. Forbes,* of Eureka, and *Raymond F. Rice,* of Lawrence, for the appellant.

*J. F. Darby,* city attorney of Eureka, *W. L. Huggins, O. T. Atherton* and *E. H. Rees,* all of Emporia, for the appellee.

The opinion of the court was delivered by

SLOAN, J.: This is an action brought by the plaintiff for the purpose of obtaining an inspection and audit of the books of the defendant to determine its annual gross income from the sale of electric energy in the city to the end that the city might enforce the collection of a franchise charge of two per cent upon such gross income. The trial court found for the plaintiff and entered judgment accordingly. The defendant appeals.

The trial court made special findings of fact, which are not challenged by either party, and conclusions of law, as follows:

"FINDINGS OF FACT.

"1. At all of the times hereinafter mentioned the city of Eureka was a city of the second class, operating under the commission form of government.

"2. The Kansas Electric Power Company is a corporation organized under the laws of the state of Kansas, and since the year 1926 has been engaged in the distribution and sale of electric energy for light and power for both public and private consumption in the city of Eureka.

"3. In May, 1914, a franchise was granted by the city of Eureka to one R. M. Wilson for the construction, operation and maintenance of an electric light and power plant and distribution system in the city of Eureka for a period of twenty years. This was under ordinance No. 529, passed and approved May 25, 1914, which recited that it was granted under and in conformity with chapter 83, Laws of 1909 (sec. 14-1701, R. S. 1923), and which was submitted to and approved by the electors of the city in accordance with said statute. This franchise was granted to R. M. Wilson, his successors and assigns, has never been repealed, has not expired by its terms, and is the only franchise ordinance under which the said Wilson or any of his successors or assigns has ever operated the electric light system in the city of Eureka, and the operation of said plant by the said Wilson, or any of his successors or assigns, was by virtue of said ordinance No. 529.

"4. In May, 1914, the said R. M. Wilson, being the owner of the electric property and distribution system in the city of Eureka, sold the same to one R. G. Lafite. Thereafter said property was operated by Lafite (who at first transacted business under the name of the Eureka Light and Power Company and later under the name of the Eureka Electric and Ice Company), until the year 1922, when he sold it to one Albert Emanuel. During the same year the property was transferred by said Emanuel to the Eastern Kansas Power Company, a corporation, which operated it from 1922 to 1926, and then sold and transferred it to the Kansas Electric Power Company, which has owned and operated the same since that time.

"5. It was provided in section 14 of said ordinance No. 529 that—

" 'In consideration of the privilege given the grantee under this franchise by the city of Eureka, Kansas, the grantee agrees to pay the city of Eureka, Kansas, two per cent of the annual gross income derived from the sale of electric energy in the city of Eureka, Kansas, as recorded on the books of said grantee and collected by said grantee; it being agreed that said books shall be open to audit, at all times, by the commissioner of finance and revenue of the city of Eureka, Kansas, or the proper person in authority.'

"Also provides for furnishing free electric service to the city, which was done, the value thereof being $200 or $300 per year.

"6. In section 5 of said ordinance No. 529 was fixed a maximum schedule of residence, commercial and power rates at which electrical energy was to be furnished to private consumers by the grantee. Section 12 of said ordinance provided that the city should have the right at any time to revise and change the schedule of rates therein provided and to fix and establish rates, and in pursuance thereof several changes were made, increasing and lowering the rates as the increased or decreased operating expenses of the plant warranted. All

of these changes were embodied in ordinances amending section 5 of ordinance No. 529, but none of them were submitted to the electors of the city for approval.

"7. Shortly after his acquisition of the property in 1914, Lafite entered into a ten-year contract with the city for the furnishing of electricity for street lighting and water pumping. The water-pumping contract was revised in 1917 by a reduction in the rate and the extension of the term ten years from that date. Thereafter, and in 1920, increases were allowed in the rates for pumping water and street lighting of between twenty and twenty-five per cent on account of the usual conditions of expense.

"8. In 1920, when one of the increases in rates was made, Lafite was in default in the payment of the two per cent gross receipts charge provided for in section 14 of ordinance No. 529. A lump-sum settlement of $2,500, in payment of all arrears, was agreed upon, payable in monthly installments of $250. The first payment was made on November 5, 1920, and monthly payments were made thereafter, all of which were deposited in the general fund of the city.

"9. During the early part of the year 1921 there was considerable agitation by the people of Eureka for a reduction in electric rates charged private consumers, and the city authorities desired a reduction in street-lighting and water-pumping rates. As a result of numerous conferences between the city officials and Lafite, an agreement was reached that the street-lighting and water-pumping rates should be reduced to the levels which prevailed prior to May, 1920, and that there should also be some reduction in residence and commercial lighting rates, the extent of which, however, was not agreed upon. In order to secure such reduction the city officials on their part were willing and agreed that the two per cent gross receipts charge, amounting at that time to approximately $1,000 per year, be eliminated. Accordingly, in July, 1921, the city governing body passed ordinance No. 824. In this ordinance a new schedule of rates to be charged by the electric light company was promulgated. The same were much lower than the rates then being paid, but not lower than the rates fixed in the original franchise ordinance No. 529. By this ordinance No. 824 section 14 of said original ordinance, providing for the two per cent gross receipts charge, was repealed; but this ordinance No. 824, by which it was attempted to repeal this two per cent gross receipts provision, was never submitted to the electors of the city as required by section 14-1701, R. S. 1923. Lafite, being dissatisfied with the schedule of rates contained in ordinance No. 824, appealed to the public utilities commission of the state of Kansas. A hearing was had and said commission made an order increasing the rates promulgated by ordinance No. 824, but reducing the rates somewhat from the rates in force prior to the passage of said ordinance.

"10. Immediately following the passage of ordinance No. 824 Lafite reduced the rates for water pumping and street lighting in accordance with the agreement which he had theretofore reached with the city authorities covering such rates.

"11. In fixing the rates in ordinance No. 824 the city authorities used a

basis from which they contemplated that Lafite would appeal to the commission, and were about forty per cent lower than the then existing rates. Lafite had not agreed to the rates named in ordinance No. 824 and was not guilty of any breach of agreement in appealing.

"12. At the hearing before the commission it appears that there was some discussion with reference to this two per cent charge, and the fact that the city authorities, by ordinance, had repealed the same, but it does not appear whether this was in any way taken into consideration by the commission in fixing the rates in its order.

"13. During the period from 1922 to 1928, when the letter set out in the next finding was written, the city made no claim, through its constituted officers, of any kind, for the two per cent franchise charge, nor was any demand made, on the part of the city, for the payment of such during this period.

"During this period the defendant and its predecessors made several changes in rates and in so doing the payment of such gross receipts charge was never contemplated.

"14. In March, 1928, the city attorney of Eureka, Homer Gooing, wrote to the Kansas Electric Power Company at Eureka as follows:

" 'The present governing body of the city of Eureka considers ordinance No. 824 invalid so far as it purports to repeal section 14 of ordinance No. 529, and I have been instructed to notify you that the city will expect you to account for and pay to it 2 per cent of your gross income from the sale of electric energy in Eureka for the entire period during which you have been operating in this city.'

"Thereafter and on the 26th day of October, 1929, this action was brought.

"CONCLUSIONS OF LAW.

"1. That portion of ordinance No. 824 passed by the city commission of Eureka in July, 1921, which purports to repeal section 14 of ordinance No. 529, never having been submitted to the electors of said city as required by law, is invalid and does not in any way affect the liability of the defendant, the Electric Light Company, to pay said two per cent gross receipts to the city as compensation for the use of the streets, alleys, avenues and public grounds of said city for its poles, wires and other property.

"2. All claims on the part of the plaintiff, against the defendant, for said two per cent on gross receipts accruing more than five years prior to the commencement of this action, are barred by the statute of limitations.

"3. The defendant, as required by section 14-1701, R. S. 1923, and under section 14 of ordinance No. 529, should be, and it is ordered, to open its books to the audit of the commissioner of finance and revenue of the city of Eureka, Kansas, or the proper person to be appointed by this court for that purpose, in so far as the same covers the five-year period of time immediately preceding the commencement of this action."

Did the trial court err in its conclusions of law? It may be stated at the outset that since ordinance No. 824 was not submitted to and approved by the electors of the city it is, in so far as it attempts

to amend, extend or enlarge the franchise contract, void and of no effect. (R. S. 14-1701, subdivisions 7 and 8; *City of Manhattan v. United Power and Light Corp.*, 129 Kan. 592, 283 Pac. 919.) The appellant contends, however, that the repeal of section 14 of ordinance No. 529 is included within the regulatory power expressly conferred on the city commissioners in R. S. 14-1701, subdivision 5. The authority and necessity for section 14 of the ordinance are found in the sixth subdivision of R. S. 14-1701. The two per cent charge met the requirement of the statute and gave validity to the ordinance. This construction had been placed on the ordinance by the parties. The trial court found that in 1920, when the city consented to an increase in the rates, it insisted on the payment of the two per cent charge, which was at that time in arrears, and the grantee in the franchise ordinance consented thereto. The court holds that the repeal of section 14 of the franchise ordinance was not within the rate-making power conferred on the city commissioners, and could not be repealed without the consent of a majority of the electors of the city voting thereon at an election duly held.

Appellant further contends that it entered into an agreement with the city which has been fully performed and the city has received a substantial consideration therefrom; that by reason thereof the city is estopped from questioning the validity of the attempted repeal of the two per cent charge. From the findings of fact made by the trial court it appears that in 1921 there was considerable agitation for a reduction in electric light rates, and, as a result of numerous conferences, Lafite agreed that the street-lighting and water-pumping rates should be reduced to the level which prevailed prior to May, 1920, and that there should also be some reduction in residence and commercial lighting rates, the extent of which was not agreed upon. The city officials agreed that the two per cent gross receipts charge, which amounted at that time to approximately $1,000 a year, would be eliminated.

Performance on the part of the party asserting estoppel is necessary. Was the agreement fully executed by the appellant and its assignors? The city officials attempted to repeal the section of the ordinance providing for the two per cent gross receipts charge by passing ordinance No. 824, which was not submitted to the electors of the city. In this ordinance a new schedule of rates was promulgated, much lower than the rates then being paid, but higher than the rate schedules in the original franchise ordinance. Lafite

reduced the rates for water pumping and street lighting in accordance with the agreement, but was dissatisfied with the rates promulgated by the city and appealed to the public utilities commission. This, however, was not in violation of his agreement. A hearing was had before the public utilities commission and a new schedule of rates fixed by the commission. The court, however, was unable to determine whether or not the two per cent gross receipts charge was considered by the commission in arriving at the new schedule of rates.

The appellant earnestly contends that the case of *Municipal Power Transmission Co. v. City of Lyndon,* 127 Kan. 59, 272 Pac. 158, is in point and controlling. In that case the contract was performed on both sides for some five years, and the court held that it should be specifically performed. In the case under consideration the evidence does not show full performance of the contract, and therein lies the distinction.

The burden was on the plaintiff to establish performance of the contract, and performance of the contract required that the two per cent charge should not be taken into consideration by the public utilities commission in fixing a schedule of rates. If it was one of the elements considered by the commission in arriving at its order, Lafite did not fully perform his contract and the elements essential to constitute an estoppel were not established. To give validity to an invalid but not unlawful or illegal contract through the doctrine of estoppel the assertor must establish that, relying upon conduct and assertions of the other party amounting to a representation that the contract would be performed, he, fully and in good faith, performed his part of the contract to his injury. (21 C. J. 1111; *Municipal Power Transmission Co. v. City of Lyndon,* supra; *O'Leary v. Street Railway Co.,* 87 Kan. 22, 123 Pac. 746.) The findings of fact by the trial court do not bring the appellant within this rule, and the doctrine of estoppel does not apply.

It is further contended by the appellant that by reason of the delay of the city in asserting the rights claimed in this case, and the changed condition resulting therefrom, there had been such laches as would bar a recovery. The law relating to the doctrine of laches was clearly defined by this court in *City of Hutchinson v. Hutchinson,* 92 Kan. 518, 141 Pac. 589:

"The doctrine of laches is equitable in character, and mere lapse of time is not a bar to relief when the rights of the parties to the suit have not been

prejudicially affected by the delay, the rights of innocent third persons will not be prejudicially affected, and nothing has occurred to create an equitable estoppel against the moving party or to create an equity in favor of his adversary." (Syl. ¶ 1.)

See, also, *Rice v. Kilworth*, 132 Kan. 418, 295 Pac. 700.

The trial court did not find that the rights of the appellant had been prejudicially affected by the delay, and no subject of equitable consideration is presented in favor of the appellant except the lapse of time. Laches, therefore, does not bar the enforcement of the contract.

There is a cross appeal in this case in which it is contended that the trial court erred in holding that the statute of limitations was available as a defense. This is an action to enforce a contract and is governed by the laws relating to contracts generally. (*City of Wichita v. Railroad & Light Co.*, 96 Kan. 606, 152 Pac. 768.) The court properly held the statute of limitations applicable.

Finding no reversible error, the judgment is affirmed.