No. 30,971.

The City of Bluff City, *Appellant*, v. The Western Light & Power Corporation, and The Central Republic Bank & Trust Company and Arthur T. Leonard (Interveners), *Appellees*.

(19 P. 2d 478.)

Opinion filed March 11, 1933.

*Jesse D. Wall* and *A. V. Roberts,* both of Wichita, for the appellant.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger* and *E. S. Hampton,* all of Salina, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This action was commenced by Bluff City, a city of the third class, against the Western Light and Power Corporation to set aside and hold for naught ordinances of that city, Nos. 104 and 105—the former being one purporting to authorize the sale of the electric light plant of the city, consisting mainly of a transmission line from Anthony to Bluff City and the distributing system in Bluff City, and the latter granting to the defendant a franchise to use and operate said system in Bluff City—because the ordinances are voidable and void and their passage and the transfer of the plant were procured by fraud on the part of the defendant, and for a rescission of the transfer under ordinance No. 104 and a

reconveyance by defendant to plaintiff city of the electric plant and for an accounting of all profits from the operation of the plant since defendant acquired possession thereof. To the amended petition was attached as exhibits copies of the ordinances in question, the minutes of the meetings at which they were passed and of other meetings in connection with the transfer of the plant.

The answer was a general denial and a number of special denials and a plea of the two-year statute of limitations as to the specific recovery of personal property and as to an action for relief on the ground of fraud. The Central Republic Bank and Trust Company and Arthur T. Leonard, trustee, were permitted, as mortgagees of the property of the defendant company, to intervene and file an answer as to their rights. Replies were filed by plaintiff to the answers of the defendant and the interveners, which replies were general and special denials and included some allegations of fraud in addition to those in the amended petition.

The allegations of fraud were in substance as follows: That the defendant knew or should have known it had no right to purchase such plant; that the law theretofore permitting it to be done had been repealed and no legal proceedings had been instituted to effect or make such purchase; that defendant knew that the consideration of $6,000 was but a small part of the value of the plant, that it was in fact no consideration for the plant or the franchise; that defendant knew the consideration was not cash but bonds, and that the city had no right to purchase or accept bonds and the defendant had no right to deliver them; that the consideration was not paid in cash, because, when the balance of cash, $5,400, was paid by check, defendant demanded of the city a warrant for $6,000, and bonds for that amount were delivered by defendant to the city; that defendant's agents represented to the city that it was not paying for the current it was using, that the city was operating at a loss and large bills were accumulating against it and the city would be liable for large damage suits on that account unless the city sold the plant to defendant; that such agents represented to the public service commission that defendant was the highest and best bidder for the plant and it had agreed to pay $6,000 in cash for it, which was a fair and reasonable price; that it would furnish current to consumers of the city and vicinity for a price less than then prevailing, and failed to tell the commission that the plant was earning six per cent on $30,000; and that none of such fraud had been

discovered by the plaintiff until December, 1931, a month before the filing of this action.

The essential dates for a due consideration of the questions here involved, as they were contained in the pleadings, are as follows: Both ordinances were passed February 20, 1929, published in the official paper March 7, 14 and 21, 1929, ordinance No. 104 to take effect after first publication; law under which ordinance No. 104 was enacted was repealed and amended by the legislature of 1929, becoming effective March 8, 1929; the hearing concerning the sale of the plant before the public service commission, May 15, 1929; sale approved by commission May 17, 1929; transfer concluded by plaintiff signing sale agreement and receiving draft for balance of $5,400 and exchanging $6,000 warrant for $6,000 bonds May 31, 1929; possession taken by defendant May 31, 1929; this action commenced January 7, 1932.

After the opening statement by counsel for all parties an objection was made by both defendants to the introduction of any testimony, for the reason that the amended petition and opening statement of counsel for plaintiff show affirmatively that the cause of action, if any ever existed, is barred by the two-year statute of limitations and fail to disclose any claim of any facts that would toll the runing of the statute. The trial court sustained the objection. Plaintiff also made an offer of proof, which, on objection of defendants, was denied, and plaintiff's motion for new trial was overruled and judgment was rendered for defendants for costs, from all of which rulings and orders the plaintiff appeals.

The first and most important question involved in this controversy is the application of the two-year statute of limitations (R. S. 60-306, subdiv. 3) which is pleaded by the defendants both as to the specific recovery of personal property and relief on the ground of fraud. The undoubted purpose of the entire action is the recovery of personal property, namely, the electric plant and the profits from the use of it since possession was acquired by the defendant power company. One of the necessary steps to accomplish that end is to set aside the ordinance authorizing its sale to the defendant. It might be the duty of city officials to institute a proceeding to set aside any ordinance when it develops that the ordinance was void or voidable or its passage induced by fraud, but no one can read the amended petition in this case without concluding that the

purpose of this action is to obtain restitution of the specific property, and the setting aside of the ordinance is only a means to that end.

Appellant cites many decisions of this and other courts holding that statutes of limitations are not ordinarily applicable to cities, and that rights, duties and privileges conferred and imposed upon municipal corporations exclusively for the public benefit cannot ordinarily be lost through nonuse, laches or estoppel. Among such from this state are *Douglas County v. City of Lawrence,* 102 Kan. 656, 171 Pac. 610; *State v. School District,* 34 Kan. 237, 8 Pac. 208; *In re Moseley's Estate,* 100 Kan. 495, 164 Pac. 1073; *State v. Dixon,* 90 Kan. 594, 135 Pac. 568; and *City of Winfield v. Water Co.,* 51 Kan. 70, 32 Pac. 663. Most of these rulings were in cases where the state or municipal corporations were exercising governmental functions, and two of them show the court retained jurisdiction in actions by the city to set aside contracts made many years prior to the bringing of the actions. If the gist of the action now under consideration was simply to set aside the ordinance for the benefit of the city and would stop there, these rulings might apply to both ordinances.

In this state we have long recognized the fact that a city enjoys two very distinct lines of official duties—governmental functions and proprietary right. It was said in the case of *City of Wichita v. Railroad & Light Co.,* 96 Kan. 606, 152 Pac. 768:

"It is well recognized that every municipal corporation exercises dual functions: one in its capacity as a governmental body; the other in its proprietary capacity. Plaintiff's right under the ordinance and laws to be paid a percentage of defendant's receipts is a proprietary right and not one inhering in the exercise of governmental power. In this respect its rights are governed by the same rules that apply to contracts made by an individual or a private corporation." (p. 608.)

Ordinance No. 104, authorizing the sale of the plant, is in the nature of a contract, and this action is to set that contract aside. In the case of *City of Eureka v. Kansas Electric Power Co.,* 133 Kan. 238, 299 Pac. 938, the city sought to enforce a contract made by ordinance concerning a commission due the city under a franchise ordinance, and the court held that it was an action to enforce the contract and was governed by the law relating to contracts generally, and that the trial court properly held the statute of limitations applicable. (See, also, *Municipal Power Transmission Co. v. City of Lyndon,* 127 Kan. 59, 272 Pac. 158.)

Appellant concedes the rule stated in *City of Coffeyville v. Met-*

*calf,* 134 Kan. 361, 5 P. 2d.807, *City of Topeka v. Ritchie,* 102 Kan. 384, 170 Pac. 1003, and other city cases cited by appellee in this connection to show the statute of limitations is applicable to a city where it seeks to enforce a contract, but insists it is here not recognizing any contract but saying the purported ordinance and contract are void and have been so from the very beginning. The very fact that it is a purported contract gives it the standing of a contract for the time being and makes it subject to the treatment applicable to a contract in the proceedings to set it aside.

Ordinance No. 104, authorizing the sale of the plant, passed February 20, 1929, published March 7, 1929, to take effect after first publication, approved by Public Service Commission, May 17, 1929, and sale consummated May 31, 1929, was in the nature of a contract, and proceedings for its enforcement, annulment or rescission are to be governed by the rules applicable to contracts between individuals, including the statute of limitations (R. S. 60-306, subdiv. 3). This action not being commenced for two years and seven months after the consummation of the purported contract, it was barred as the trial court held.

We have purposely limited our comment to ordinance No. 104, because, as stated above, an action of the city for no other purpose than to correct a wrong for public benefit without involving any proprietary rights might be regarded as the exercise of a governmental function and not be subjected to the statute of limitations. Without deciding that the action to set aside ordinance No. 105 is of that class, it can be definitely said that the only purpose the plaintiff could have in this action to recover the specific property would be to afford a clear field for the plaintiff to exercise the use of the plant if it should recover the property in this action. To set the franchise ordinance No. 105 aside without restitution of the property to the plaintiff would not naturally and reasonably be within the purview and prayer of the amended petition, so we will, for the time being, defer consideration of ordinance No. 105 until we have concluded the matters involving ordinance No. 104.

Appellant insists it was entitled to introduce the evidence it proffered and have it go to the jury, particularly upon the question of fraud, and especially when, under the objection to the introduction of evidence, it was entitled to have all the averments of the amended petition considered as true the same as upon the hearing of a demurrer to a petition, and then, applying that to ·the averments of

fraud and the recent discovery of the fraud, it insists the trial court unquestionably erred in sustaining the objection to the introduction of evidence. Conceding the claim of appellant that it is entitled to have its averments of fraud and the time of discovery of the fraud considered as true, that does not entitle appellant to have the proof of those averments go to the jury or the demurrer to such petition overruled unless those averments of fraud constitute a fraud upon the rights of the plaintiff as a matter of law, and the same as to the recent discovery of the fraud. It is not difficult to say with reference to the items of fraud alleged and enumerated in this action, as set out above, that practically all of them concerned matters which were within easy reach of the officers of plaintiff city and they, as such officers, had constructive notice thereof. The real facts in many of the items above enumerated were peculiarly accessible to the officers; for instance, the income or profit from the plant, that it was being operated at a loss and not paying its bills for the current it was using, and that they were selling the plant for only a small part of its value. Their records showed its original cost and how long it had been used. More than two months elapsed between the enacting of the ordinance authorizing the sale and the consummation thereof. In the face of these facts shown by the amended petition, including the allegations of recent discovery, as a matter of law, like a conclusion of law upon findings of fact, the holding must be that the plaintiff had constructive notice of the matters so alleged as being fraudulent, and by the exercise of reasonable diligence might and reasonably could have discovered the fraud promptly in the items so alleged as fraudulent.

"When the means of discovery of a fraud lie in the public records required by law to be kept, which involve the very transaction in hand and the interests of the parties to the litigation, the public records themselves are sufficient constructive notice of the fraud to set in motion the statute of limitations—following *Black v. Black,* 64 Kan. 689, 704, 68 Pac. 662; *Pinkerton v. Pinkerton,* 122 Kan. 131, 251 Pac. 416." (*Smith v. Rector,* 135 Kan. 326, syl. ¶ 2, 10 P. 2d 1077.)

It was said in the City of Coffeyville case, *supra,* that the shortages of the collector in his accounts "were revealed by the simplest process imaginable" and that "It is idle to debate whether the fraud was discovered within the purview of the two-year statute of limitations." (pp. 368, 369.)

"The fraud is deemed to have been discovered whenever in the exercise of reasonable diligence it might have been discovered, and in such a case reasonable diligence required an examination of the record, which would necessarily have disclosed the fraud alleged." (*Donaldson v. Jacobitz,* 67 Kan. 244, syl., 72 Pac. 846. See, also, *Rogers v. Lindsay,* 89 Kan. 180, 131 Pac. 611.)

The holding of the trial court that the action of the plaintiff was barred by the two-year statute of limitations (R. S. 60-306, subdiv. 3) will cover and include the allegations of the amended petition that the ordinances Nos. 104 and 105 were voidable, but would not necessarily include the allegation that they are absolutely void. There are two reasons assigned·by appellant why they should be held void, viz., because they were not enacted at legal meetings of the city council, and because the statute under which ordinance No. 104 was enacted (R. S. 15-809) was repealed before the ordinance could be made effective. They were enacted at a special meeting of the council on February 20, 1929, at 'which the mayor, the clerk and all the members of the council were present and participating, but they were assembled without any formality as to written request or call.

R. S. 15-106, after prescribing the rule for regular meetings of the council of cities of the third class, continues as follows:

"Special meetings may be called by the mayor or acting mayor, on written request of any three members of the council, specifying the object and purpose of such meeting, which request shall be read at the meeting and entered at length on the journal. In all cases it shall require a majority of the councilmen elect to constitute a quorum to do business."

Appellant insists that a written request specifying the object and purpose of the meeting is a necessary preliminary step without which no special meeting could be legal. It cites a number of cases from this court and the courts of other states where special meetings were held to be illegal when attended by less than the entire membership, although a quorum was present, but in none of them from this state was it said or hinted that the formality of the written request was necessary to the legality of the meeting, if all the members had been present.

In the case of *Botts v. City of Valley Center,* 124 Kan. 9, 257 Pac. 226, the written request was made, and the real question involved was whether the members present should have waited longer for an absent member who could have attended the meeting an hour or two later.

In the case of *Water Co. v. City of Wichita,* 98 Kan. 256, 158

Pac. 49, no session at all was held, but two members of the city council at different times and places authorized the work to be done and recognized the obligation, which, of course, was not sufficient.

Appellant cites 43 C. J. 500, where the necessity of preliminary notice to members of the council is emphasized, but ample exception is therein made for the modification outlined in subsequent sections. One is where the giving of notice is impracticable, and another is where the members are all present, the latter being on page 501, and is as follows:

"Although there is contrary authority, it is very generally held that in the absence of statute providing otherwise, where all the members of a council are in attendance at a special meeting and participate therein, the absence of a call for such meeting or the failure to give notice of the meeting to all or any of the members will not render invalid the meeting or action taken thereat where the meeting is otherwise regular. Under these circumstances call and notice are considered to have been waived. Also, written notice required by statute is dispensed with where all the members had actual notice and attended and participated in the business of the meeting."

The only case noted under the "contrary authority," mentioned in the first sentence of the last quotation, is *Forry v. Ridge*, 56 Mo. App. 615, where the language of the charter of Kansas City provided as follows:

" 'The common council shall hold a meeting on the third Monday in April in each year and thereafter on the first Monday of every month, but not oftener, unless especially convened by the mayor in pursuance of law.' " (p. 619.)

The statute on the subject of calling such special session was as follows:

" 'The mayor shall call special sessions of the common council by proclamation, which shall be published as may be provided by ordinance.' " (p. 619.)

The opinion states that no ordinance was ever enacted as to such proclamations, and that the third word in the statute, "shall," had been recently substituted for the word "may." So there are two special restrictions in this case that are quite different from our statute on the subject: first, the charter provision limiting meetings of the council to one each month "unless especially convened by the mayor in pursuance of law," and second, the statute prescribing that the mayor shall call special meetings in a certain specified way. No such limitations or restrictions are necessary under our stat-

ute, and all courts readily recognize the wide difference in the use of the word "may" instead of "shall."

The statute in New Mexico as to special meetings of city council (Annotated Statutes 1915, § 3601) is as follows: "The mayor and any three members may call special meetings by notice to each of the members of the council, personally served or left at his usual place of residence. . . ." and it was held in the case of *Schwartz et al. v. Town of Gallup et al.*, 22 N. M. 521:

"Notice of a special meeting of a city council or board of trustees of a town may be dispensed with, or its necessity waived, by the presence and consent of every one of those entitled to notice." (Syl. ¶ 1.)

The language of the statute on this subject in Arkansas is "the mayor or any three aldermen may call special meetings in such manner as may be provided by ordinance," and in *Harrison v. Campbell*, 160 Ark. 88 (1923) it was held:

"An ordinance passed at a special meeting of the council of an incorporated town is valid if all members of the council were voluntarily present at the meeting and participated in the proceedings." (Syl. ¶ 1.)

In the state of Louisiana the statute on this subject is very much like our own, that the mayor or any other aldermen may, by written notice, call a special meeting of the mayor and board of aldermen for the transaction of important business, and in the case of *Town of Jonesboro v. Gentrey*, 165 La. 1003, it was held:

"Where minutes of town council show that mayor and councilmen were present at meeting called specially to enact ordinance regulating operation of pool and billiard halls, ordinance unanimously adopted by yea and nay vote was not unconstitutional and illegal because it was passed at special meeting of town council, minutes of which did not show that written notices were issued and served on council members as required by Act No. 136 of 1898, § 22." (Syl.)

Section 8026 of Annotated Statutes of Nebraska (1903) is as follows: "The mayor and any three councilmen shall have the power to call special meetings of the council, the object of which shall be submitted to the council in writing and the call and object and return thereon shall be entered on the journal by the clerk;" and it was held in *Nelson v. City of South Omaha*, 84 Neb. 434:

"A meeting of a city council held on a day other than that fixed for its regular meetings, although no call for a special meeting has been made, is a valid special meeting if all the members of the council are present and consent to such meeting." (Syl. ¶ 1.)

We conclude, as was done in most of the cases above cited, and many others, that the formal requirement of the statute is waived by the presence of all the members and their participating in all the business coming before the council, as is shown by the minutes that all members were present and the vote on every proposition was unanimous. This applies to the passage of both ordinances and the transaction of the concluding business of the sale at the council meeting on May 31, 1929.

Was ordinance No. 104 void because of the repeal of R. S. 15-809 the day after the ordinance took effect? The ordinance itself said it would take effect upon its first publication, which was March 7, 1929. The ordinance was the agreement or contract between the parties made at the special meeting of the council on February 20, 1929, at which time $600 was paid in cash on the purchase price of the electric plant and received by the city. The new law, chapter 135 of the Laws of 1929, amending and repealing the old law, R. S. 15-809, was published and took effect March 8, 1929. Under the old law the city council was authorized to sell and dispose of its municipal electrical plant and system, while the amendment required that such proposition should be submitted to a vote of the qualified electors of the city for their decision.

As was said earlier in this decision, the enactment of ordinance No. 104 authorizing the sale of the electric plant was the exercise of a proprietary right of the city. It was the making of a contract and receiving a consideration for some personal property, and it is governed and controlled by the same rules and regulations as those which govern when contracts exist between individuals, firms or corporations. The purchaser has a vested right in the contract so made and cannot be deprived of that right by a subsequent change in the law which limits the right of the seller. There was, of course, no vested right in the law itself by anyone so that a claim could be made of being deprived of a right by the repeal and amendment of the law. But because the defendant here had contracted for the purchase of this property and partly paid therefor in cash while the city had full legal right and statutory authority to sell the same without submitting the matter to the voters, it was an enforceable and binding contract, notwithstanding the law was repealed and amended the following day.

"The repeal of a statute does not operate to impair or otherwise affect

rights that have been vested or accrued while the statute was in force. This rule is applicable alike to rights acquired under contracts and to rights of action to recover damages for torts." (59 C. J. 1187.)

"Generally, a statute will be construed as applying to conditions that may arise in the future. An act will not be given a retrospective operation unless the intention of the legislature that it shall so operate is unequivocally expressed." (*Douglas County v. Woodward,* 73 Kan. 238, syl. ¶ 1, 84 Pac. 1028.)

We do not think the resolution or motion adopted at the same meeting directing that the ordinances be published in three issues of the paper change the law or the provision of ordinance No. 104 that it take effect after the first publication.

' Appellant cites *Roberts v. M. K. & T. Rly. Co.,* 43 Kan. 102, 22 Pac. 1006, to show that the repeal of a law may cancel the privileges under it as it formerly existed, but we do not find this to be applicable to the situation here. In that case the government gave a right of way over Osage ceded lands to a railroad company on which to construct its line of road, and afterwards and before the location and construction of the railroad the act was repealed. It was held that the railroad company had secured no right of way by construction of its road, and the opinion shows that it did not attempt to avail itself of this right until about two years after the law was repealed.

A similar situation existed in Kansas a few years ago when the majority of females was changed from eighteen to twenty-one years, and it has been held that rights acquired under the existing law while one was eighteen years of age were not lost by the repeal and amendment of the law. (See *Smith v. Smith,* 104 Kan. 629, 180 Pac. 231.)

Appellant has subdivided these general topics here considered and has exhaustively treated and briefed them. They have been examined and fully considered in the light and from the angle viewed by the appellant, but we do not find that they modify or in any way change the conclusions herein reached in approving the rulings of the trial court on the general propositions as herein outlined and discussed.

There seems to be no need of further considering the possible invalidity of ordinance No. 105 along lines wherein it may not be subject to exactly the same rules as are applicable to ordinance No. 104, because a finding of a distinct difference in the result as to it

would not avail the appellant anything within the prayer of its petition.

The judgment is affirmed.

HARVEY, J., dissenting.

BURCH, J., not sitting.