No. 29,951.

THE STATE OF KANSAS, ex rel. J. GLENN LOGAN, County Attorney, *Appellant,* v. THE NORTH TOPEKA DRAINAGE DISTRICT et al:, *Appellees.*

(299 Pac. 637.)

Opinion filed June 6, 1931.

J. Glenn Logan, county attorney, Frank Miller, Edwin A. Austin, O. B. Eidson and John M. Williams, all of Topeka, for the appellant.

J. J. Schenck, H. R. Logan and C. P. Schenck, all of Topeka, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action brought in the name of the state on the relation of the county attorney of Shawnee county to enjoin the North Topeka drainage district and its directors and a contractor from deepening and widening the Phillips ditch and from paying for the same out of the general funds of the district. The trial court made findings of fact and conclusions of law and rendered judgment against the plaintiff, refusing to enjoin the defendants from making the improvements and paying the expense thereof out of the general fund, and the plaintiff appeals.

The theory of the appellant is that the drainage district organization is not authorized to use the general funds of the district for the improvement of a ditch which "does not protect or benefit all the lands within the district," nor to use the funds to improve a ditch originally constructed by the township before the district was organized nor where such ditch was constructed for the purpose of draining lands outside of the drainage district, nor where the deepening or widening will benefit lands outside of the district, nor where the purpose is for surface drainage and not a natural watercourse, nor to annul in effect the existing obligation under the township drainage act formerly put in operation by the township, nor without the district first determining and apportioning the cost of such expense between those directly benefited within the district and those outside the district, and that the levy of an assessment for such purpose and under such conditions is in violation of the fourteenth amendment of the federal constitution.

The most essential points of the court's findings are as follows:

That the North Topeka drainage district is a public corporation organized in 1906 under and by virtue of the Laws of 1905, and since that time the boundaries have been extended until at the present time the district comprises about 13,000 acres of land.

That the main natural watercourse running through the district is Soldier creek, into which empty various other creeks and watercourses, among them Little Soldier creek, which originates outside of the district and enters the district from the north, flowing southerly and finally entering Big Soldier creek. To the east of Little Soldier creek is a valley varying in width from half a mile to two miles. The land near the creek is higher than it is for some distance east, which prevents the water from the valley draining into Little Soldier creek. Running east and west on the north side of the district, and between sections 30 and 31, is a public highway on the north side of which is a ditch which has a slight fall to the west and through which some water runs into Little Soldier creek when it is low. South of this road is a ditch running from near the creek in an easterly direction, which drains water from the road into the Phillips ditch.

"Beginning at the north line of said section 31, which is the north line of the drainage district, is a ditch known as the Phillips ditch, which extends in a southerly and southeasterly direction for about two and one-half miles, emptying into Messhaus creek, which in turn empties into Big Soldier creek a short distance away in section 8-11-15. (Finding No. 2.)

"The Phillips ditch was constructed by Menoken township before the organization of the North Topeka drainage district. In excavating this ditch a large amount of dirt was thrown to the west side, creating a dike, through which some laterals from the land on the west were extended. While no defined watercourse existed where this ditch was run, except perhaps for a short distance at the lower end near Messhaus creek, the ditch followed a natural course of drainage and furnished reasonably good drainage for the valley lying east of Little Soldier creek. The waters carried, and intended to be carried, by the Phillips ditch are what is known as surface waters arising from rainfalls within the valley east of Little Soldier creek. Since the creation of the North Topeka drainage district all the maintenance and repair work on this ditch has been done by that district." (Finding No. 3.)

That north of the drainage district there are about four square miles of land which naturally drains into the valley east of Soldier creek and down the valley following the Phillips ditch to its entrance into Messhaus creek. The Phillips ditch drains about 1,300 acres of land within the district and three miles of public road within the district. That prior to 1906 Menoken township also constructed a ditch extending down through the lowlands lying north of section 31,

the present north line of the drainage district, which was called the Pence ditch, to carry water down from that territory into the valley served by the Phillips ditch, which, unless taken care of by the Phillips ditch, would naturally overflow the lowland in section 31 of the drainage district. Both the Pence and the Phillips ditches were constructed under the township drainage law.

That prior to 1926 Little Soldier creek overflowed its banks in section 30 north of the district several times each year and the overflow of water passed down the valley east of Little Soldier creek, overflowing large portions of the valley inside and outside of the drainage district.

That in August, 1926, the owners of land in section 30 entered into a contract with the drainage district whereby it was to build a dike along the east bank of Little Soldier creek and do other work to better protect the land north of the district as well as in the district, and the district was to clean out, deepen and widen the Phillips ditch within the district so as to carry the drainage water into the ditch instead of permitting it to spread out over the valley both inside and outside of the district. That the citizens outside of the district completed their work as specified by the engineer selected by the drainage district, and paid therefor the sum of $737. That the drainage district has not fulfilled or complied with its part of the contract, although it has approved the plans and specifications of its own engineer, which were also approved by the chief engineer of the department of agriculture of the state of Kansas, and the plans and specifications are on file. That due notice has been served upon the drainage district and demand that it comply with its contract.

That Little Soldier creek has not overflowed its banks in section 30 since the building of the dike, yet each year thereafter crops have been regularly destroyed in section 30 which probably would not have been destroyed had the contract of the drainage district been fulfilled.

"The members of the drainage board were acting in good faith in entering into said contract. That portion of said drainage district situated along the Phillips ditch was benefited by the work done in the way of building dikes along Little Soldier creek in section 30 and removing obstructions therein in said section 30." (Finding No. 8.)

Shortly before the bringing of this action the district board entered into a contract with one Somers to do the work of cleaning and

deepening the Phillips ditch according to specifications on file, and the board contemplated paying for such work on the yardage basis out of the general fund in the hands of the board, which is raised by levying a tax on all the taxable property in the district; also from the money received for rentals of land owned by the drainage district, including lands within the drainage district served by the Phillips ditch and from sand royalties and interest accruing from special funds.

"The work which the drainage board contemplated doing is not original construction work, but is repair, maintenance and improvement work of a ditch already in existence at the time the territory adjacent thereto was included in the drainage district, and such work is necessary for the purpose of completing the contract made with C. S. Pence and other property owners owning lands in section 30, and for the purpose of properly draining the valley to the east of Little Soldier creek within the drainage district." (Finding No. 13.)

That for the last twenty years the drainage district has paid for all improvements, maintenance and repair work, not including the dikes already referred to, by the general levy on all the property within the district. That prior to 1929 there were some cuts made and work done in cleaning out the Phillips ditch, costing approximately $1,400 or $1,500, and paid out of the general fund, and since that time $600 for similar work on the Phillips ditch, but without substantially improving it. It is estimated that the repair work contemplated will cost $1,400 or $1,500, which the board contemplates taking out of the general fund, and that the deepening and widening of the Phillips ditch will not be a benefit to any of the land within North Topeka and adjacent thereto, the district being about twelve miles long.

The following are the conclusions of law made by the court:

"First. The North Topeka drainage district has all the powers given drainage districts by the drainage laws enacted in 1905 and the subsequent amendments thereto. Among such powers is the power to levy and collect a general tax, not exceeding five mills, on all property within the district.

"Second. The board of directors of said drainage district have power to pay all current expenses out of the general fund. By current expenses are meant not only such expenses as are continuous and regular and occur each year in the carrying on of the business of the drainage district, but also those expenses which are necessarily incurred as incidental to the performance of the duties enjoined upon the board of directors and which they are required to perform each year, whether the work for which the particular expense incurred is one which will necessarily occur each year or not.

"Third. The board of directors of said drainage district has the power to maintain such ditches, drains, sewers and canals through lands subject to

overflow as may be deemed necessary to carry off and prevent water from standing or remaining in pools or becoming stagnant, or as may be deemed necessary for sanitary purposes or conducive to the public health, convenience and welfare. Overflow water means overflow surface water as well as overflow water from streams.

"Fourth. The board of directors of said drainage district has power to determine what work is necessary to be done within its district, within the limits of the authority conferred upon it by the statute, and in a case requiring the exercise of judgment, to determine whether the same is repair work or maintenance work or new construction work. Maintenance work, with reference to a drainage ditch, means to put and keep a ditch in a condition to fulfill the purposes for which it has been built. The board has power to remove faults and imperfections in a drainage ditch by repairs and changes, until the ditch attains the measure of usefulness which was the purpose of the original construction. Repairs and maintenance work are ordinary current expenses of a drainage district, and may be paid out of the general fund.

"Fifth. The defendant drainage district has the power to contract with other drainage districts, public and private corporations and individuals owning land situated outside the drainage district which are subject to injury by overflow in common with the land situated within the district. The making of the contract between the drainage district and C..S. Pence and others was a matter within the discretionary power of the board of directors of the defendant district.

"Sixth. The repairing and reopening of a ditch is a matter which is contemplated when the ditch is originally constructed. The proceedings provided for in section 24-418, Revised Statutes of Kansas, 1923, are not applicable to the work contemplated by the defendant board on the Phillips ditch, and the proceedings set forth in said section 24-418 are not required for the reopening and repairing of a ditch where the work is to be paid for out of the general fund, and no bonds are to be issued and sold to pay for such work.

"Seventh. The directors of the defendant board are vested with discretionary powers as to the plans for the construction of repairs and changes to be made on the Phillips ditch, and their action in such matter is not subject to a review by this court.

"Eighth. The contract entered into in August, 1926, between the defendant drainage district and C. S. Pence and others is a valid and binding contract, which has not been fulfilled on the part of the drainage district, which has received benefits thereunder without fulfilling its part of the contract.

"Ninth. It is within the power of the board of directors of said drainage district to pay for said contemplated work out of its general fund now on hand and in its treasury, not including any portion of the general fund originally derived from the sale of bonds issued for the purpose of creating the North Topeka dikes.

"Tenth. Injunction denied. Judgment for defendants."

The errors assigned by the appellant relate entirely to the conclusions of law made by the trial court, the findings of fact being accepted by the appellant as the facts in the case.

Appellant contends that the defendant drainage district, being organized under the provisions of chapter 215 of the Laws of 1905 (R. S. 24-401 *et seq.*), is limited in its authority and jurisdiction to the protection of land from overflow waters from natural watercourses and has no jurisdiction or authority over ditches constructed or used for the purpose of draining surface water, calling attention to the enactment of other law having reference to drainage of surface water, particularly the law of 1879, chapter 100 (R. S. 24-201 *et seq.*), and the law of 1911, chapter 170 (R. S. 24-501 to 24-529). The first-named act did not pertain to the handling of such matters by district organizations, and the latter act became a law long after this ditch had been constructed and was in use and after the defendant district·had extended its boundaries to include this ditch and the surrounding territory.

There is no doubt that the main purpose of the enactment of 1905, under which this district was organized the following year, was to protect property against overflow from natural watercourses, yet such a law would naturally and properly include such details and incidents of construction as were intimately connected with its purpose and efficiency, even if no such matters were mentioned or included· in the act. But we find in R. S. 24-407 the following language:

"Fourth. . . . also to make and maintain such ditches, drains, sewers and canals through lands subject to overflow as may be deemed necessary to carry off and prevent water from standing or remaining in pools or ponds and becoming stagnant upon overflowed lands, or as may be deemed necessary for sanitary purposes or conducive to the public health, convenience, and welfare";

And in the twelfth and fourteenth subdivisions:

". . . or the drainage of overflowed lands therein, or that may be conducive to the public health, convenience, or welfare.

". . . also to so contract and coöperate with private corporations and individuals owning lands situated outside of the district or state which are subject to injury by such overflow in common with lands situated within the district; also to contract for and receive aid and contributions from the United States, and from all public corporations the property within which will be benefited, and with all private corporations and individuals whose property will be benefited by such improvement, whether such property be situated within the district or within some other district or state."

Also, in R. S. 24-408, the following:

"Third, to contract or otherwise coöperate with any city or other municipal corporation in which the same may be situated, or with any corporation or person, for the construction and maintenance of sewers, drains, or ditches for

the drainage of any drainage district or portion thereof, or to prevent the same from being overflowed by surface water from adjoining lands . . ."

These provisions plainly show the intention of the legislature was to protect by ditch or otherwise land that was subject to overflow not only from natural watercourses but from surface water, and not only for agricultural purposes but also for sanitary purposes or such as would be conducive to public health, convenience and welfare. The last citation above given was not a part of chapter 215, Laws of 1905, but was enacted in 1917 (ch. 173, § 1), and the act begins with the following clause: "All drainage districts incorporated under the provisions of chapter 215 of the Session Laws of 1905 shall have power" to do the things therein enumerated, the third item thereof being the one quoted. So if there could possibly be any dispute or doubt as to a drainage district having authority under the original law to drain surface water, it would be entirely removed by this supplemental act specifically extending the power and authority to make contracts with individuals for the maintenance of ditches for the drainage of any district or portion thereof or to prevent the same from being overflowed by surface water from adjoining lands.

Appellant contends that since the Phillips ditch as well as the Pence ditch was constructed by the township, the board of directors of the North Topeka drainage district has no authority to ignore the township laws, no authority to contract with the persons whose lands have been lawfully burdened with the construction, repair, and improvement of the Phillips ditch, and who are responsible for all damage which its want of repair and inadequacy to carry the water collected on this land causes, and no authority to assume the repair and improvement of that ditch and pay for such work with the money of the property owners of the district under their control in the general fund of the district. It is further urged in this connection that the township law still stands and provides methods by which repairs on such ditches are to be made and that they should control, referring particularly to R. S. 24-205 and also a new law enacted in 1911, being R. S. 24-216, which prescribe how a township ditch shall be improved or repaired. The first act places the duty on the trustee of the township to direct and supervise the repairs and apportion the cost among the parties benefited after the work has been finished. The act of 1911 requires the formality of a petition asking for the making of needed repairs and the apportionment and collection of the expense after completion of the work in the same

manner as the cost of construction was met, which was by apportionment among those benefited.

Appellant urges the existence of an obligation on those who were benefited by the construction of this ditch originally to continue to keep it in repair "for all time," and that the statute imposes this duty. Perhaps this would be correct if the ditch remained under the supervision of the township board or trustee, but we cannot ignore the fact that rights, privileges, duties and obligations are gained and lost, assumed and abandoned. These lands that were originally benefited by the construction of this ditch, and presumably their owners paid the cost of its construction, have been placed on the assessment list of the drainage district and the ditch has been taken over bodily by the district. The district has for twenty years been collecting from these parties for maintenance expense and has directed the repairs of this ditch during all that time, and its officers are apparently still willing to continue to make repairs and fulfill the contract they have made in that regard. The contention is that once a township ditch, it can never be anything else, or rather the original plan of repairs and upkeep must continue "for all time." The decisions cited do not strengthen this contention of the appellant, but generally give full jurisdiction and control to the district except in case of fraud.

In the case of *Schrag v. Blaze Fork Drainage District,* 119 Kan. 169, 237 Pac. 1047, an individual had constructed extensive dikes and ditches to protect his farm, and later a drainage district was organized under chapter 168 of the Laws of 1911, which was to relieve swamp and overflowed land, and its boundaries included the land, dikes and ditches of this individual and he claimed a prior right and right to proceed as he had previously done and brought a mandatory injunction against the drainage district, and it was held:

"A drainage district, organized under chapter 168 of the Laws of 1911, through its board of supervisors, has exclusive jurisdiction over surface-water drainage within its boundaries.

.     .     .     .     .     .     .     .     .     .     .     .

"An individual who by artificial means conveys waters from submerged lands in one drainage area, watershed or district to another has no vested right, by priority, to continue the maintenance of his ditches and outlets within the district to which the water is conveyed against the will and contrary to the judgment of the supervisors thereof, although such drainage district was subsequently organized." (Syl. ¶¶ 1, 4.)

In the case of *Drainage District v. Drainage District*, 104 Kan. 233, 178 Pac. 433, which was a controversy between two drainage districts only, it was held:

"Under the drainage act, Laws of 1905, chapter 215, it is competent for the directors of a drainage district to change the channels of watercourses and relocate and establish new ones, and to that end they may make contracts with landowners outside of the district, and the judgment and discretion so vested may be exercised by them without interference or control by the courts, unless fraud or bad faith enters into their action." (Syl. ¶ 1.)

There is no rivalry or controversy here between the district and the township. The township is not claiming any rights. It, from all appearances, willingly surrendered the supervision of the maintenance of the Phillips ditch to the drainage district organization when it extended its boundaries. The landowners near by who might be called the ones directly benefited are not apparently pressing this matter, but the nine-tenths of the district are objecting in the name of the state to the district incurring the expense of the repairing of this ditch, because it should be done by the township.

Would repairs on a schoolhouse built by a suburban school district have to be made and paid for by the residents of the original country school district long after the city had extended its boundaries so as to include the building and had been using it in conducting its city schools? We think not. We cannot subscribe to the appellant's theory in this regard so earnestly argued.

Appellant insists that the provisions of R. S. 24-418 and 24-422 were not followed by the board of the drainage district. The former provides for the issuing of bonds, and the latter for assessing the cost of construction to the territory benefited by the ditch. Neither of these plans was being pursued, and consequently the prescribed details need not be followed. In this same connection appellant urges the expense should be assessed to the parties benefited, but this proposition is out of the case when we accept the findings of the trial court that the proposed work was nothing more than repairs.

Attention is called to another finding of the court that "The deepening and widening of the Phillips ditch will not be a benefit to any of the lands within North Topeka and adjacent thereto," and it is argued therefrom that this expense should not be paid out of the general fund. The answer to that is, when it has been held

to be only a current expense, that no current expense for repairs to the drainage works at the lower end of the district should be paid out of the general fund unless there should be a direct benefit to the taxpayer in the farthest northern portion of the district. The district is a unit for the interests of all, and there is nothing unfair about the fact that improvements are sometimes of a greater benefit to one than to another.

The court found and stated the items which constituted the general fund and that they were such as could be used in any or all parts of the district for the district improvement, which is in harmony with the views expressed in the opinion in *Jefferson County Comm'rs v. Stonehouse Drainage District*, 127 Kan. 833, 275 Pac. 191. This is not, in our judgment, in any way a violation of the provisions of the fourteenth amendment to the federal constitution.

The act gave the board the power to deal with parties residing outside of the district and obligate the district to repair the Phillips ditch for the benefit it contracted to receive and did receive, as the court found, by the preventing of any overflow from the Little Soldier creek for the past four years, and the district has not only full authority but it is its duty to comply with its promise and repair the ditch.

We find no error in the conclusions of law as announced by the court, nor in overruling the motion for a new trial.

The judgment is affirmed.