No. 30,537

C. A. ALBER et al., *Appellees*, v. CITY OF KANSAS CITY et al., *Appellants*.

(25 P. 2d 364.)

Opinion filed October 7, 1933.

*Alton H. Skinner*, city attorney, and *John C. O'Brien*, deputy city attorney, for the appellants; *Wm. Drennan* and *Joseph A. Lynch*, both of Kansas City, of counsel.

*Elmer E. Martin* and *Thomas A. Pollock*, both of Kansas City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This case involves the right of the city of Kansas City to levy special assessments on the lots and lands of C. A. Alber and others, who have been named as plaintiffs, for the construction of a sewer in the northeast part of Kansas City. That part of the city adjoins the Fairfax drainage district, which lies mostly outside of the corporate limits of Kansas City, and the city and the district entered into a contract to unite in the joint project of sewering and draining a strip of territory on the northeast side of the city, and the drainage district lying between the city and the Missouri river. The city created sewer district No. 31, of somewhat irregular lines, adjoining the drainage district, which had already done considerable work in ditching and draining the territory in that district, which it appears comprised more than 1,700 acres. The drainage district had begun the improvement by an open ditch construction which was opposed by the city on the ground that it would be deleterious and a menace to the health of the people contiguous to the improvement, including the people of the city. In May, 1924, the city and the drainage district entered into the following contract for the sewering and draining of the territory in both districts:

"Whereas, The city of Kansas City, Kansas, deems it necessary and has provided for the construction of a main storm and sanitary sewer in sewer district No. 31, to provide proper facilities for a fast-growing community, and in order

to reach an outlet and discharge for said sewer, it is necessary to cross lands in the Fairfax drainage district of Wyandotte county, Kansas, outside the corporate limits of said city; and,

"Whereas, A sewer constructed as aforesaid would be of use and benefit to the Fairfax drainage district and a joint sewer would meet the needs of said city and drainage district and make the construction of the same more economical and satisfactory by use of same pump house and pumping machinery; and,

"Whereas, The Fairfax drainage district has heretofore let contracts for the building of an open ditch at the exact location of the sewer and provided a right of way therefor from North Ninth street and Missouri Pacific railroad tracks, to north bank of Jersey creek near the Missouri river, and has also heretofore let contract for pump house, pumps and necessary machinery to operate said pumps, all at the sole cost and expense of said drainage district; and,

"Whereas, All of said improvements so contracted for and now under construction by the Fairfax drainage district will be necessary for the completion of the plan for disposal of sewage in said sewer district No. 31; and,

"Whereas, At meeting and confirmances heretofore had between the city and its representatives and the Fairfax drainage district and its representatives, it has been verbally agreed between the parties that inasmuch as said sewer will be beneficial to sewer district No. 31 of said city and also to the Fairfax drainage district, that each should bear the following proportion of the expenses of the construction of said sewer plan and improvements, namely:

"The city to pay twenty-six forty-sixths ($26/46$ths) and the drainage district twenty forty-sixths ($20/46$ths) of the entire cost thereof, and the Fairfax drainage district to be credited on its twenty forty-sixths ($20/46$ths) of the cost of said sewer and plan with the actual cost of the construction of the open ditch herein mentioned, pump house and necessary machinery therein.

"Now, therefore, in consideration of the premises and the mutual agreements of the parties hereto, one to the other, it is hereby stipulated and agreed by and between the city of Kansas City, Kansas, a municipal corporation, and the Fairfax drainage district of Wyandotte county, Kansas, a public corporation existing according to law, as follows:

"(1) A right of way for said sewer shall be provided by the Fairfax drainage district without cost or expense to the city, and the drainage district will also give the city any easement or right of way it may have for lateral sewers.

"(2) The sewer shall be so designed and constructed as to serve the interests of both parties.

"(3) The city shall advertise for bids for the construction of said sewer and let the contract to the lowest and best responsible bidder.

"(4) The cost of said improvement shall be paid by the parties hereto in the following proportions, namely: Twenty-six forty-sixths ($26/46$ths) shall be paid by the city and twenty forty-sixths ($20/46$ths) shall be paid by the drainage district in addition to furnishing the right of way for said sewer, it being understood that the drainage district shall be credited with the actual cost of the work authorized and performed by it in excavating open ditch for sewer, construction of pump house and installation of necessary machinery and ap-

pliances in the pump house, for which itemized and detailed statements of the cost thereof shall be furnished and approved by the city before credit shall be given on said joint project as herein provided.

"(5) The drainage district reserves the right to construct such portions of said sewer under public roads and railroad rights of way as may be necessary or expedient prior to the letting of the contract by the city, in which event the drainage district shall be credited for such amount only as said sections of the sewer may proportionately represent of the entire sewer, the price of which shall be determined by the city when contract is let for the construction of the sewer on unit basis or otherwise.

"(6) The Fairfax drainage district specifically agrees that it will pay such additional sum as may be necessary to fully share and pay twenty forty-sixths ($20/46$ths) of the entire cost of said improvements when the same is completed or at such time as the city may require and the exact cost thereof is determined.

"(7) When said sewer and improvements are completed, the drainage district agrees to operate and maintain the pumps at times of high water at its own cost and expense.

"(8) Each party hereto pledges its full faith and credit to pass necessary resolutions and take the proper legal steps to give performance and effect to this agreement.

"In witness whereof, the parties hereto have signed the above agreement this 27th day of May, 1924.

(Signed) ————————————."

The contract, as well as the evidence, discloses that the project was undertaken and carried out as a joint enterprise, with a view of lessening the cost of a system which would serve both districts and at the same time be more economical than if each constructed a separate independent improvement. An ordinance was passed by the city defining the boundaries of sewer district No. 31, and was later amended in several particulars by subsequent ordinances. Estimates were made by engineers, which were approved by the controlling authorities, and contracts were let for the project in July, 1924, and the work proceeded from that time to the completion of the project, which was about July, 1925. At that time a settlement was made with the contractors on the basis that the city was liable for and would pay twenty-six forty-sixths (26/46ths) of the cost of the entire construction, and the drainage district would pay twenty forty-sixths (20/46ths) of it.

The improvement, as we have seen, was begun in 1924 and was completed in July, 1925. The work was approved and accepted by the authorities, and the compensation to the contractors was paid in 1925. This action to enjoin the levy of special assessments on the lots and tracts of land owned by plaintiffs within the sewer

district was begun on February 2, 1928. The plaintiffs sought to enjoin the levy upon various grounds, the principal ones being that the contract between the city and the drainage district was unauthorized by law and therefore void; that sewer district No. 31 was not legally created; that the city was without authority to contract for the improvement or to create a liability against plaintiffs' property for its construction; that the ordinances enacted providing for the improvement were invalid; that the construction contracts were illegal; that the procedure for the valuation of the plaintiffs' property for special assessment was contrary to law; that the temporary notes issued in payment of the improvement were illegal; that the bonds issued to take up the notes could not be legally issued by the city, and that the assessments made upon plaintiffs' property were unjust and invalid.

The answer of the defendants alleged that the steps they had taken from the initiation of the improvement until its completion and the levies made in pursuance of the ordinance passed were in conformity with law. They further alleged that in a former action brought by J. C. Looker and other owners and taxpayers similarly situated, the questions involved in this action were considered and decided in January, 1926; that in that case the court expressly held that the various steps taken in the making of the contract for the joint enterprise, the creation of the sewer district, the ordinances enacted pertaining to the improvement, were valid, and that that judgment bars the maintenance of this action.

A motion was made to dismiss this appeal on the ground that the notice of appeal was not signed by L. S. Harvey, who was city attorney when service of the notice was made. It appears that prior to his appointment and the trial of the cause Mr. Harvey had been consulted and employed by some of the plaintiffs, and therefore deemed himself disqualified to take part in the trial of the cause. It was tried by two assistant city attorneys, aided by special counsel employed by the city for that purpose. The notice of appeal was signed by the two assistant city attorneys who tried the case, and it is so manifestly sufficient as a notice of appeal as to make discussion unnecessary. No question is raised as to the right and authority of these officers to represent the city in the litigation, and they were unquestionably competent to give the notice of appeal.

One of the many questions argued in the case is that the contract between the city and the Fairfax drainage district for the joint con-

struction of the sewer as designed would operate to serve parts of the city as well as the adjoining territory of the Fairfax drainage district. It may be noted that part of the drainage district extended within the boundaries of the city, but the greater part of it lies outside. The drainage district is a municipal organization created by law, and has been recognized as a municipal entity, with power and discretion in the matter of constructing sewers and drains and the enforcement of assessments to pay for the same. (*Drainage District v. Reimer*, 114 Kan. 473, 219 Pac. 268.) By statute the governing body of the district is authorized to—

"Contract or otherwise coöperate with any city or other municipal corporation in which the same may be situated, or with any corporation or person, for the construction and maintenance of sewers, drains or ditches for the drainage of any drainage district or portion thereof, or to prevent the same from being overflowed by surface waters from adjoining lands, and to levy taxes and issue bonds in accordance with and subject to the provisions of chapter 215 of the Session Laws of 1905, and acts amendatory thereof to pay for the cost of such improvements." (R. S. 24-408.)

When the district was organized and the directors chosen they had authority to contract with corporations and individuals for sewers, drains and dikes, and the judgment and discretion vested in them could, in the absence of fraud or bad faith, be exercised without interference or control of individuals or even by the courts. In exercising this governmental function they could determine the location, size and character of the sewers and drains, and even though they made mistakes in the plan or construction the court was not authorized to interfere or substitute its judgment for that of the directors. (*Drainage District v. Drainage District*, 104 Kan. 233, 178 Pac. 433.) There it was said that the directors—

"To accomplish the purpose, its authority and operations are not confined to the district, as it is authorized to contract with individuals and private corporations owning lands outside of the district. The defendant, therefore, had a right to relocate the channel of the creek, to make dikes and ditches, and to drain the land and dispose of the water in the way which the directors in their judgment might deem best, and to that end they could make contracts with landowners outside of the boundaries of the district. The directors of the district being invested with the discretion, judgment and authority as to the best means of accomplishing the purpose, may exercise such discretion, judgment and authority without interference or control by the courts, unless bad faith or fraud enters into their action." (p. 235.)

Touching the powers of the drainage district, see *Jefferson County v. Drainage District*, 97 Kan. 302, 155 Pac. 54; *Shrag v. Blaze Fork*

*Drainage District,* 119 Kan. 169, 237 Pac. 1047; *State, ex rel., v. North Topeka Drainage District,* 133 Kan. 274, 299 Pac. 637. It is manifest that there was power in the drainage district to contract and coöperate with the city as to the joint project of building a sewer designed to serve and benefit the territory of the district as well as a part of the territory of the city adjoining the district, and which discharged the sewage through a common outlet into the Missouri river.

The city, a municipal corporation, is given broad general powers in the matter of construction of sewers. These have been defined in R. S. 13-1013, 13-1014, 13-1015, 13-1016 and 13-1029, which authorizes the city to provide a system of sewers and to contract with others in the construction of sewers, even with those beyond the corporate limits. Although there is no specific provision stating in terms that the city may unite with a drainage district in such a project, the general powers conferred upon cities, together with the provisions authorizing drainage districts to contract with corporations and individuals in such a project, appear to be amply sufficient to authorize the city to join in the making of the contract. We have no hesitation in holding that the parties named had the power to enter into the contract, and no fraud being shown the contract must be held to be valid.

An ordinance was passed defining the boundaries of sewer district No. 31, and subsequently other ordinances were enacted amending and repealing the early ordinance which slightly changed the boundaries of the district. Some criticisms are made of the validity of these ordinances, but we discover no substantial defect in them.

There was delay and futile attempts in making the assessment on the lots and parcels of land for the improvement within the district. Finally, on January 1, 1928, ordinance No. 24,010 was passed, levying special assessments on the plaintiffs' property and other property within the district towards the payment of the sewer construction. That ordinance is attacked as invalid on the technical ground that the title thereto contains more than one subject, and that the subject is not clearly expressed in the title. The title is:

"An ordinance apportioning and levying special assessments for the cost of the construction of sewers in sewer district No. 31, upon the lots and tracts of land liable for the payment thereof."

The ordinance provides that the commissioners of the city, having contracted for the construction of a sewer in district No. 31, and the

cost of the improvement having been ascertained to be an amount which is stated, and the appraisers having appraised the lots and tracts of land situated in the district and the benefits accruing to each of the tracts by reason of the construction of the sewer, and the appraisement having been returned in writing, due notice of which has been given as provided by law, and the board of commissioners having equalized, approved and confirmed the appraisement and report of special benefits, thereupon levied specific amounts upon each tract. The subject is a single and comprehensive one which is fairly expressed in the title, being that of levying assessments for the cost of the construction of the sewer, which is sufficiently described. The limitation is not to be construed in any narrow or technical sense. It is not necessary to lumber up the title with the details of the act. It has been held to be enough to state in general terms the provisions of the ordinance. (*Taneyhill v. City of Kansas City,* 133 Kan. 725, 3 P. 2d 645.) We think the title of the ordinance measures up to this standard.

We still have the question of benefits to the owners of the lots and tracts of land assessed for the cost of the improvement. The district, it appears, comprises a large territory, some of it of a rough and rugged character, much of it sparsely settled, and it appears that some of the owners who are plaintiffs have no access to the sewer so far as it has been constructed. The sewer is no more than a main or trunk sewer. The general scheme for the sewering and draining of the district contemplates the further building of subsewers and laterals to supply drainage and sewerage to all residents within the district. These subsewers and laterals have not been constructed. Upon the evidence the court found:

"The Fairfax sewer will be available to all of the lots and tracts of land included in sewer district No. 31, and will serve all of the territory therein for sanitary sewerage, and flood-water drainage, if and when a system of lateral and subsewers is constructed and maintained in said sewer district No. 31, and the same are joined and connected up with the Fairfax sewer, and that all of said territory then will be specially benefited thereby."

Until the plan is so far carried out that owners of property in the district have access to the sewer and may derive benefit therefrom, their property cannot be assessed to pay for sewer construction. Special benefits are essential to the validity of an assessment in such a case. No lawful assessment can be levied against a lot owner who is not specially benefited. His property cannot be assessed for a

general benefit shared in by the public at large. Of course any landowner who has access to the sewer now built and to whom special benefits are available, may be required to pay for such benefits. If within a reasonable time subsewers or laterals are built in completion of the system which will afford the lot owner sewer benefits, assessments may then be made upon his property. It is not necessary that a sewer shall be completed in a brief time. It may be built in sections. As fast as a section of the plan is completed assessment may be made on the property then benefited. On this question it was said in *City of Atchison v. Price,* 45 Kan. 296, 25 Pac. 605:

"The fact that a sewer constructed in one district or portion of the city connects with or is an extension of another already constructed, does not make the territory drained by both a single and distinct district, nor does it require that all the property within that territory shall be assessed for the sewer last constructed. It is for the city to determine how early and rapidly the system shall be completed, and any section or extension of the system may be built whenever it is deemed necessary and expedient. When a section or extension is made, the territory drained and specially benefited by the construction of an extension or section, however small, may be regarded as a district. A lateral running through an alley of a single block, and connected with another sewer, may be constructed by the city, and the territory specially benefited will alone constitute a district upon which the entire cost of the lateral may be assessed." (p. 312.)

See, also, *Gilmore v. Hentig,* 33 Kan. 156, 5 Pac. 781; *Atchison v. Price,* supra; *Botts v. City of Valley Center,* 124 Kan. 9, 257 Pac. 226.

It therefore seems that such assessments may be made when the improvement is extended and so constructed as to be available to the landowner and be of special benefit to his property, after the city has taken proper steps in determining and declaring the amount of the assessment upon each lot or tract within the extension. It must be held that there was error in the granting of a perpetual injunction against the levy of assessments on property specially benefited by the present construction, and also against the levy of future assessments on lots and tracts which may be later afforded special benefits when the plan is completed and sewer privileges are available to the owners.

It may be noted here that the trial court was in error in holding that the contract for the joint project between the city and Fairfax drainage district was void, and also in holding that the assessment ordinance was invalid and unenforceable because of a defect in the title.

It is contended on the part of the city that the delay of the plaintiffs in failing to bring the action of injunction against the carrying out of the project until after the sewer was built, constituted laches which barred them from the relief asked. It is said that the proposed project was a matter of notoriety, was discussed in the press and among the citizens generally, and must have been well known to the plaintiffs, and yet they did not move to enjoin the construction of the sewer until after it was completed, and the city had paid for the same by temporary notes, obligations which it issued, and a small amount of cash. The action was brought by the plaintiffs about twenty-five days after the passage and first publication of the final assessment ordinance. The city, as we have seen, had changed its ordinances fixing the boundaries of the city a number of times, and also those levying assessments for the sewer construction. It may be said that the taxpayer could not well know what his assessment would be until it was finally made, nor could he be sure that still another assessment ordinance would not be passed. The law contemplates that controversies as to the levy of special assessments for constructing public improvements shall be promptly determined. It has provided that no suit to enjoin the levy of a special assessment for such an improvement may be maintained after the expiration of thirty days from the time the amount due on each lot liable for assessment is ascertained. (R. S. 13-906.) There is a plain implication in the statute that up to that time an action to enjoin may ordinarily be maintained. This action was brought within the limitation mentioned, and, under the circumstances, we cannot hold that the action was barred by the lapse of time.

There is another contention by the city that plaintiffs were concluded by the judgment rendered in a former action. That action was brought by a lot owner of the district, J. C. Looker, in November, 1924, against the city, its commissioners, the Fairfax drainage district, and construction companies which had obtained contracts for the making of the sewer. He was the only plaintiff named in the title to the petition, and after alleging the making of the contract between the city and the Fairfax drainage district, which he alleged was invalid, and that certain ordinances were passed as to the creation of the sewer district, authorizing the construction of the sewer, the letting of contracts for the building of the sewer alleged to be illegal, Looker alleged that he was the owner of a lot in the sewer district, and unless prevented the city would levy assessments

thereon for the payment of the cost of the sewer. He also alleged that defendants will certify assessments to the county clerk for the collection of taxes against his property and that of other persons similarly situated, "and plaintiff brings this action in behalf of himself and others similarly situated, whose property and real estate is to be taxed to pay for the construction of said sewer." This is the only averment relating to the representation of others. Before that case came to trial Looker sold and disposed of his real estate in the district and did not appear at the trial of the case, and in effect he abandoned the prosecution of the action. The attorney employed by him did appear, and it seems that he then first learned of the disposition of the property by Looker, and that he was no longer interested in the action. However, the fact-was distinctly brought to the attention of the court, and because of the representative character of Looker, the trial was allowed to go forward. In that trial evidence was produced, findings and judgment for the city and other defendants were rendered, the court holding that the preliminary proceedings, contracts and ordinances and other steps taken pertaining to the sewer, were valid and that Looker was denied the relief asked, and that defendants should go hence without day with their costs.

The ground of the invalidity asserted by Looker and the relief asked were mainly those alleged by plaintiffs in the present action, and defendants insist that adjudication is binding on plaintiff and estops him from maintaining the present action. The parties represented by Looker were not named, and no attempt was made to allege or show that the consent of others alleged to be similarly situated for the bringing of that action was obtained. It does appear that one of the plaintiffs in this action was a witness in that case, and Looker has said that he represented four or five other persons. In this case there are 189 plaintiffs who are landowners and against whom assessments have been levied, and they are insisting that the judgment in the Looker case is not *res adjudicata* as to them. The code provides that every action must be prosecuted by the real party in interest. (R. S. 60-401.) There is a code provision that:

"When the question is one of common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." (R. S. 60-413.)

Another statute provides for enjoining the governing body of a municipality from enforcing an illegal tax or assessment upon the property of a person, or from threatening to do so, and that such person may maintain an action of injunction against the officers, and it then provides:

"Any number of persons whose property or rights may be charged or affected injuriously by such threatened illegal or unauthorized act may join as parties in the application to obtain such injunction." (R. S. 13-1403.)

Nothing in the petition or in that case alleged the knowledge or consent of the parties other than the actual plaintiff. It may be said that each taxpayer has a separate and individual right to protect, and no one of them has a direct interest in the relief granted to another owner of individual property. It is true that some of the wrongs charged by Looker against defendants would apply to and might be effective in procuring injunctive relief to others. It has been held that the code provision (R. S. 60-413) is applicable where there are a large number of taxpayers affected and having a general or common interest in a question at issue, and in the remedy, and that they may join together, and therefore that there was no misjoinder of parties. (*Skinner v. Mitchell,* 108 Kan. 861, 197 Pac. 569.) But as to the binding effect of a judgment in an action involving a large number of parties not named, where their consent was not obtained, nor even knowledge of the action shown, persons who have not accepted the representation of the actual party or participated in the trial or received benefits of the judgment, a different question arises. It has been decided:

"Where one plaintiff belonging to a numerous class of persons brings an action in behalf of himself and all others similarly situated, the judgment which may be rendered is binding on others of the class who accept the representation, and who connect themselves with the litigation, either by coming into the suit or seeking to share in the fruits of the judgment, or by acquiescing in it. But it is not binding upon those who do not participate in the proceeding or otherwise join in it." (*Haese v. Heitzeg,* 159 Cal. 569, syl. ¶ 3.)

There is some conflict in the authorities as to the effect of a judgment obtained by an actual defendant who claims to represent others similarly situated. In Pomeroy's Code Remedies, 5th ed., §§ 296, 297, the subject is discussed as to whether a person is bound by a former judgment, and it is said:

"Of course he is not bound unless he was practically a party to the proceeding; the plainest principles of common justice refuse to hold a man concluded if he has not had 'a day in court.' . . ."

"If, however, the prior suit has been terminated, and the question arises in a subsequent controversy, and involves the conclusive effect of the former adjudication upon the class of persons represented by the actual parties, in order that such judgment should be conclusive upon any particular person of the class either in his favor or against him, there must have been the previous formal act on his part of applying to the court, and an order thereon making him a party to the action, so that his name should have appeared in some manner upon the record; or it must be shown that he had notice of the proceedings, and an opportunity to unite in them of which he neglected or refused to avail himself. These views and conclusions reconcile the decisions which at first sight appear to be conflicting, and they present a practical and harmonious rule of procedure." (See, also, *Stevens v. Brooks,* 22 Wis. 695.)

The Looker case is exceptional in that the only actual party who undertook to represent others similarly situated, transferred his lot and rid himself of any interest which would give him a right to maintain the action. He did this before the trial of the case, at which he did not appear. When he became disqualified and went out of the case, did he go out in both his personal and representative capacities? His only claim had been that he asked relief for himself and those similarly situated. Persons who owned lots in the sewer district were not similarly situated with one who at the time of trial and judgment had no property in the district subject to assessment. The question must be decided on the facts peculiar to the present case. Our conclusion is that under the circumstances mentioned, the plaintiffs have not had their day in court on the issues involved, and that the former judgment is not a bar to the maintenance of the present action of the plaintiffs. In view of the conclusions we have reached on the principal points in the case, it is not necessary to comment on other angles of the many questions discussed.

Something is said about the issue of temporary notes payable to the contractors for the construction of the sewer because of the limitation then existing and applicable on the issue of bonds. The issue of these notes, for which bonds were later substituted, did not affect the legality of the contracts. The bonds are valid obligations of the city, which it must pay, regardless of the validity of the special assessments. The city may recoup from the owners of lots and lands within the district to the extent that such property is specially benefited by the improvement.

Our conclusion is that the judgment be reversed with directions to ascertain those who now have access to the sewer as constructed and to whom benefits are available. Such parties are adjudged to be

liable for the assessment. It is further directed that those who shall receive special benefits when the system is extended and completed by the building of subsewers and laterals, and are thereby specially benefited, shall then be held liable for assessments made for such benefits, but will not be liable to such assessments until the construction has proceeded to the extent of furnishing them sewer privileges, which are of special benefit to their lots and tracts of land.

HARVEY, J., not sitting.