No. 32,815

CHARLES B. TAYLOR, *Appellee*, v. THE FOCKS DRILLING AND MANU-FACTURING CORPORATION et al., *Appellants* (C. W. Shaffer et al., *Appellees*).

(62 P. 2d 903)

Opinion filed December 12, 1936.

*W. D. Jochems, C. A. Matson, I. H. Stearns* and *E. P. Villepigue*, all of Wichita, for the appellants.

*J. C. Ruppenthal*, of Russell, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to quiet title to 144 sections of land. Plaintiff prevailed, and six defendants and one who was not made a party to the action appeal.

The first question presented on this appeal is the validity of a judgment quieting title to all the real estate in this total tract of land, without making the legal or equitable owners of the land parties to the suit. The reason for not naming them was stated in the petition as follows:

"Comes now Charles B. Taylor, as plaintiff, pleading in this his first cause of action for himself and for numerous other parties who are interested and to name whom would make too voluminous caption."

There were eleven written instruments which it was alleged clouded the title of the landowners. They had been placed of record between 1923 and 1930. A summary of these instruments as set forth in the record is appended to this opinion and made a part hereof. About seventy defendants were named, including individuals, partnerships, corporations, and also unknown heirs, spouses, trustees, successors, etc. Service was had on most defendants by publication, including six of the seven appellants. Ethel Chance, the other appellant, was not named as a party defendant or plaintiff. The petition did not allege, except as to plaintiff, who the owners of certain tracts were nor what interest they might have or claim, nor that they were in possession of certain land, nor what instrument or instruments clouded the title to their particular land.

On June 16, 1934, at the May term of court, default judgment was rendered canceling the eleven instruments and quieting title as against all defendants. The May term ended September 30, 1934, and the next day, October 1, six defendants and Ethel Chance, all appellants now, filed a motion to set aside the default judgment as to all four townships, except only as to the property of the plaintiff or his heirs at law. The main grounds of the motion were, plaintiff was not the real party in interest, except as to his own land; the court had no jurisdiction to render the judgment and the judgment was void. Later appellee filed a motion to strike appellants' motion from the files, and this motion was sustained on April 12, 1935. Before the date of that ruling, however, and on November 15, 1934, by leave of court, there were filed two instruments denominated "ratifying interpleas." They were identical, with the exception of the names of parties signed thereto. They appear to have been signed by twenty-eight fee-title holders of lands within the four townships. In the "ratifying interpleas" specific tracts of land were now described and they contained in substance the following:

The party was the owner of lands set opposite his name; that each acknowledged notice and knowledge of the pendency of this action from a time before any order or decree was made; they knew and recognized the action as being brought for the benefit [among other objects of plaintiff], of all holders of real estate within the 144 sections of land; they accepted and adopted all allegations of the petition, ratified what had been done, and authorized plaintiff and his attorney to continue to act in order to maintain the decree quieting the title to this entire tract of land; that at the time of the

decree each of them assumed, expected and desired to get the benefits for his land through the action of plaintiff in behalf of each of them, as well as for himself; all requested the court to find that they knew of, ratified and do ratify the decree; all of them requested the court to quiet the title in them to their respective tracts.

The journal entry of judgment under date of April 12, 1935, recites, all defendants were in default as to the "ratifying interpleas," that the motion filed October 1, 1934, by Ben Preston, with six others (these appellants), to open up previous judgments and decrees in this action had been dismissed and stricken from the files. The journal entry further disclosed the trial court found in substance what was requested in the "ratifying interpleas," and rendered judgment accordingly.

The trial court ruled on appellants' motion on April 12, 1935. From the journal entry it would appear appellants had requested to open up the previous judgment. One of the grounds of their motion to set aside the judgment did allege want of jurisdiction owing to constructive service, that they had no notice except by publication service and that each of them had a valid defense to the action. It appears, however, they did not attempt to follow the procedure for opening default judgments obtained by publication service. It appears they relied mainly on other grounds also alleged, namely, that plaintiff was not the real party in interest insofar as the land in the four townships was concerned, and that the judgment was void.

As authority for also bringing the suit in behalf of the unnamed plaintiffs, appellee cites section 37 of the code, which provides:

"When the question is one of common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." (R. S. 60-413.)

Appellee also directs our attention to *Skinner v. Mitchell,* 108 Kan. 861, 197 Pac. 569, and *Oil & Gas Co. v. Holland,* 114 Kan. 863, 220 Pac. 1044, in both of which the above statute was discussed. A statement from the opinion in the Holland case, commenting on the Skinner case, is short but illuminating. It is emphasized by appellee in this appeal. It reads:

"When Skinner established the fact that he was entitled to an official receipt for taxes, the right to a tax receipt of every other taxpayer of the county who had paid his taxes as Skinner did, was established." (p. 865.)

That was the exact result as applied to the facts in the Skinner case, but is not true in the instant case, as will presently appear.

In the Holland case, in which it was held plaintiff could not bring that action on behalf of others, it was also said:

"Although under the allegations of the petition the false representations made to the various plaintiffs were the same, the torts committed were several. No plaintiff was affected by the cause of action of any other, or interested in the relief demanded by any other. The question whether Downing or Adams or Puterbaugh had been defrauded to his injury, was personal to him, and not of common or general interest. If Downing's case should be tried and he should recover, the necessary elements of Adams' or Puterbaugh's cause of action would not be established." (p. 864.)

The last quotation aptly describes the status in the instant case. When judgment was rendered quieting title to plaintiff's land it did not determine the right of all other unnamed landowners to have the title to their land quieted. The summary made by appellee of the eleven instruments indicates there may well be various and different issues between other numerous landowners and the large number of defendants who, it is alleged, clouded their titles. Certainly it does not appear from plaintiff's petition the issue or issues would be the same. Further, the quieting of title to plaintiff's land was not a question of common or general interest to all the other landowners. They could not be brought into the action as was attempted. They were not brought in under other sections provided by the code. Not being parties to the suit, the court had no jurisdiction over them. Neither were their particular lands described. The judgment attempting to quiet title to their lands as against appellants was not voidable but void. Such judgments may be vacated on motion at any time. (R. S. 60-3009, *Hoover v. Roberts*, 144 Kan. 58, 63, 58 P. 2d 83.) Under this condition appellants were not required to comply with sections R. S. 60-2530, 60-3011, 60-3013, or any of them. It follows appellants' motion to set aside the judgment, except as to the land of plaintiff and his heirs, should have been sustained insofar as the respective rights and interests of appellants were concerned. Ethel Chance was not made a party to the suit, and the court was without power to make an order affecting her rights.

Appellee recognizes no provision is made for "ratifying interpleas" in the code. He, however, directs our attention to a quotation from a California case, cited by this court in the case of *Alber v. Kansas City*, 138 Kan. 184, 195, 25 P. 2d 364. Appellee's quotation omits the closing sentence quoted by this court, to wit: "But is not binding upon those who do not participate in the

proceeding or otherwise join in it." The "ratifying interpleas," show these landowners knew about the suit at all times, but they did not participate in the proceeding, nor did they join in it in *any manner* until after judgment. Appellee, also, justifies the "ratifying interpleas," by a statement from 1 C. J. S. 1073, § 29d, which reads:

"An action instituted by one person without the authority of the real plaintiff may be ratified and adopted by the latter, while the action is pending, and such ratification will relate back to the commencement of the action."

These "ratifying interpleas," were not filed while the suit was pending but after judgment and within a different term of court than the one in which the judgment quieting title was rendered. Furthermore, the judgment in favor of the unnamed plaintiffs against appellants was void and could not be ratified. The new default judgment rendered on the "ratifying interpleas," and based on new and additional allegations not contained in the original petition, was unauthorized under our code and especially in the absence of issues joined thereon, could not bind appellants. It follows the judgment must be reversed, except as to plaintiff, insofar as it affects the rights of the appellants. It is so ordered.

---

## ADDENDUM

1. "Escrow agreement 'sworn to' June 25, 1921, filed December 17, 1923, between Focks Drilling & Manufacturing Company (sic.) of Wichita and Bunker Hill State Bank: 'Whereas, party of first part desires to obtain leases on a block 'of acreage situated in Russell county, Kansas, townships 13 and 14, range 12 and 13, for the purpose of drilling a test well for oil and gas. Party of first part agrees to begin drilling operation for test wells within ninety days from time block is completed. Party of second part agrees to keep possession of leases taken until party of first part has erected derrick, placed machinery and spudded in test well . . . will then deliver all leases to first party. [Signed Focks Drilling & Mfg. Corp. (sic.) by F. A. Focks, Pres. (seal); Bunker Hill State Bank by M. K. Mathews (seal)].

2. "Affidavit of Ben Preston, March 15, filed March 18, 1924, that as officer of Focks Drilling & Manufacturing Company he asserts it does not claim oil and gas leases on certain lands in the four townships.

3. "A vague 'release,' August 11, 1924, filed July 22, 1926, mentions Focks D. & M. Corp., and closes with blank line followed by Ben Preston, sec. and treas. (seal).

4. "Assignment Focks D. & M. Corp. (no seal), March 4, 1924, filed July 23, 1926, of the escrow agreement with B. H. State Bank to block of leases in the four townships.

5. "Contract, March 4, 1924, filed July 23, 1926, names four parties—Galletly, Preston, Pierce and Bullock. Preston not acknowledging and Pierce not signing, recites that first three 'are owners of approximately 30,000 acres of oil

and gas leases in Russell Co., Kans.'; that the fourth (Bullock) desires to drill 'for oil and gas in vicinity of Bunker Hill'; all parties agree to try to get the leases in escrow in the bank delivered to Bullock; Preston agrees to clear title of leases; then all four will organize B. H. Oil Co.

6-7. "Release by Galletly, Preston, Pierce & Bullock, July 23, 1926—twice filed, on July 28 and on August 17, 1926. The first record signed only by Galletly and Bullock individually, 'and as member of partnership' (of four named) to release oil and gas leases under escrow agreement and directs B. H. State Bank to surrender the leases to the lessors in four townships. The second record is signed by Pierce individually and as member of partnership of the four.

8. "Affidavit of Preston, September 27, filed September 30, 1926, that he is the Ben Preston of the escrow agreement (No. 1 above) and of the release (No. 6) and of contract (No. 5); that 'affiant Ben Preston has never at any time executed or delivered to Lee Bullock or any other person a release of oil and gas leases covering the lands in townships 13 and 14, ranges 12 and 13, Russell county'; . . . That if any release of escrow agreement or oil and gas leases from affiant or from Focks Dr. & Mfg. Company is in existence or has been filed for record, it is forged or unauthorized document, and is null and void; that affiant is not and never was partner of Bullock or Galletly or Pierce; that (No. 5 above) was never intended to create a copartnership; . . . that Bullock never had right to execute on behalf of affiant any release, etc., of writing affecting oil and gas leases on (the four townships); that the purported release (No. 6) is void, that no partnership existed; that the parties subscribing the instrument never were owners of the oil and gas leases and had no right or authority to release the same.

9. "Instrument, December 19, filed December 28, 1927, Ben Preston single, do sell, assign, set over and convey to P. K. Gaston and W. F. Bernstorf, his heirs and assigns, an undivided one-twentieth interest in and to all interest I now own in one certain escrow agreement covering some 40,000 acres more or less of oil and gas leases located in townships 13 and 14, ranges 12 and 13, Russell county, Kansas, which escrow agreement was originally made between Fox Drilling Corporation and the several landowners of the leases mentioned in said escrow agreement and the Bunker Hill State Bank . . . which escrow is now on record . . . and has been assigned one-twentieth interest in and to my present rights, titles and interests in said agreements, and any claims and equities arising from and under said agreement.

10. "Assignment, February 3, 1928, filed May 7, 1929. Ben Preston 'do hereby sell, assign, set over and convey to J. B. Stronger a one-fourth interest; Si Brubaker and Fred Turner a one-fourth interest; Alva Chance a one-half interest; their heirs and assigns a one-fortieth interest in and to all the interest I now own in one certain escrow agreement covering some 40,000 acres more or less of oil and gas leases in townships 13 and 14, ranges 12 and 13, Russell county, mentioned in escrow agreement . . .'

11. "Affidavit of Ben Preston, May 8, filed May 14, 1930, that assignments (No. 10 above) were to J. B. and Nellie Swonger, and the record 'Stronger' is error; that W. F. and Warren F. Bernstorf are same person; that these facts apply to all instruments filed for record affecting any land in aforesaid four townships."